*Cause transferred.*

---

(No. 14859.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MAX KLYCZEK, Plaintiff in Error.

*Opinion filed February 21, 1923.*

1. CRIMINAL LAW—*when a confession is competent evidence.* A confession is competent as evidence when it is voluntarily made, free from the influence of promises or threats, hope or fear.

2. SAME—*when advice to tell truth does not make confession incompetent.* Mere exhortation to tell the truth or advice that it is better to tell the truth is not alone a sufficient inducement to render a confession incompetent unless there is coupled with the advice a suggestion of a benefit in the particular case.

3. SAME—*what may be considered in determining competency of confession.* In determining the competency of an alleged confession, the situation in which the accused was placed and the circumstances surrounding him at the time, including his age, character, intelligence and strength of mind, and the further fact that he was in the custody of the officer who interrogated him, are proper facts to be taken into consideration by the court; but the mere fact that the accused is under arrest does not of itself make his confession incompetent.

4. SAME—*what is the test of competency of a confession.* The admissibility of an alleged confession is determined by the question whether the circumstances surrounding the making of the state-

ment were such that the accused might have been induced thereby
to make a false confession.

5. SAME—*when offense of contributing to delinquency of child
is complete.* The crime of contributing to the delinquency of a
child is complete when acts are committed which directly tend to
render the child delinquent, and it is not necessary that the child
who is the subject of the crime shall be delinquent or shall become
a delinquent child.

6. SAME—*when the defendant cannot complain of vacation of
erroneous appeal order without notice.* Criminal cases cannot be
reviewed by appeal, and where the court has inadvertently allowed
an appeal and on the defendant's motion has fixed an appeal bond,
the defendant cannot complain of the vacation of such order with-
out notice, where he has made no motion to suspend the issuing
of the *mittimus* to a reasonable time to enable him to apply to the
reviewing court for a *supersedeas* and for admission to bail.

THOMPSON, C. J., dissenting.

WRIT OF ERROR to the Second Branch Appellate Court
for the First District;—heard in that court on writ of error
to the Criminal Court of Cook county; the Hon. WILLIAM
E. DEVER, Judge, presiding.

MARY BELLE SPENCER, and PETER J. HOWER, for plain-
tiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E.
CROWE, State's Attorney, and GEORGE C. DIXON, (ED-
WARD E. WILSON, and CLYDE C. FISHER, of counsel,) for
the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Appellate Court for the First District affirmed a
judgment of the criminal court of Cook county in a case
tried by the court without a jury, convicting Max Klyczek
of contributing to the delinquency of a female child by tak-
ing indecent liberties with her, and a writ of error has been
sued out to reverse the judgment.

The only questions controverted on the trial were the
identity of the defendant and the sufficiency of the evidence

to establish an alibi. The testimony clearly established the commission of the offense but was entirely insufficient to connect the plaintiff in error with it, aside from his alleged confession, and this confession, if admissible in evidence, was amply sufficient to establish the defendant's guilt.

The crime was committed in the morning of February 11, 1920, on a girl twelve years old, on her way to school in the city of Chicago Heights. The criminal escaped and no public suspicion attached to the plaintiff in error, who was a Polish boy sixteen years old, then working for the Hero Furnace Company. He continued in the employ of that company until July 7, 1920. In the afternoon of that day he went swimming in a creek and in returning home passed through a field of rye. As he approached the road two boys who were passing called out to him, "Hey, you son-of-a-bitch! Come out of there!" He had a revolver, which he flourished, and the two boys ran down the road and reported to F. E. Parkler, the father of the girl who had been assaulted, that they had been held up and that his wife had sent them down to the factory after him. He started home and on the way met the plaintiff in error and began questioning him because he suspected him of being the person who had attacked his daughter. A number of people had gathered around, including Parkler's wife and daughter, and various accusations were made against the plaintiff in error. Joseph Kotal, a police officer, took the plaintiff in error to the station. This was about 5:30 in the evening, and about ten o'clock Kotal took the plaintiff in error into the chief's room and questioned him. It was then that the supposed confession was made. The defendant testified that the officer told him if he answered all the questions asked him, "yes," the officer would let him go home; that he did not know the meaning of some of the words used by the officer and did not understand half of the questions asked, but he answered all the questions "yes," except that he answered "no" to the question

about putting a gun to the girl's head. He did not know the officer took down the statement and it was not read to him.

Kotal testified that the paper which was offered in evidence as a confession was signed by the plaintiff in error in the presence of himself and John Monson, another officer, and that they signed as witnesses; that the paper was in his handwriting, and he did not use any threats or force but wrote the story down as the boy told it to him, in practically his own words; that he did not tell him that he could go home, but he did tell him that the best thing he could do was to tell the truth about everything he had done and that his statement might be used against him some day. He was corroborated by Monson, who testified that he signed the statement as a witness in the presence of Kotal and the plaintiff in error; that he told Kotal, who had written the statement, to read it to the plaintiff in error, and heard him read it to him and was present when it was signed. On cross-examination he said that there was a door between the two rooms, and that he was in the outer room a good deal of the time, going back and forth.

If the testimony of the plaintiff in error was true in regard to the manner in which the confession was secured it was not competent evidence, but if the testimony of the two police officers was true it was properly admitted. A confession which is voluntarily made, free from the influence of promises or threats, hope or fear, is competent evidence. It is true that the police officer told the plaintiff in error that the best thing he could do was to tell the truth about everything he had done, and it has been held in many cases that a statement made to one accused of crime that he had better tell the truth is a sufficient inducement to render a confession made in consequence of it inadmissible in evidence. (*Regina* v. *Laugher,* 2 Car. & K. 225; *Regina* v. *Hatts,* 49 L. T. (N. S.) 780; *Regina* v. *Griffin,* Russ. & R. C. C. 151; *Regina* v. *Cheverton,* 2 Fost. & F. 833.) Indeed, it was said in the case of *Regina* v. *Jarvis,* L. R.

1 C. C. R. 96, that the words "You had better" seem to have acquired a sort of technical meaning; that they hold out an inducement or a threat within the rule that excludes confessions. In *People* v. *Heide,* 302 Ill. 624, are cited decisions of a number of American States to the same effect. In that case we held that where an officer in charge of a prisoner merely cautions him to tell the truth if he says anything, the competency of a confession afterward made will not be affected, but in that case the statement went further than merely to tell the prisoners it would be better to tell the truth, and its effect was to lead them to expect some benefit from the opportunity of going before the State's attorney with their statements. In other cases it has been held that telling a prisoner that it would be better for him to tell the truth is not the offering of an inducement to him to confess or the making of a threat for that purpose. (*Huffman* v. *State,* 130 Ala. 89; *Hardy* v. *United States,* 3 App., D. C. 35; *State* v. *Kornstedt,* 62 Kan. 221; *State* v. *Staley,* 14 Minn. 105; *State* v. *Anderson,* 96 Mo. 241; *Hintz* v. *State,* 125 Wis. 405; *Commonwealth* v. *Hudson,* 185 Mass. 402.) These decisions seem to have the better reason. It is not reasonable to suppose that advice to one accused of crime that it is better for him to tell the truth would of itself be an inducement to him to tell an untruth or would alone be a sufficient inducement to make a statement falsely confessing crime. Mere exhortation to tell the truth will not make a confession afterward made inadmissible, but the statement that it is better to tell the truth may be made under such circumstances as to make a confession afterwards made incompetent. If there is coupled with the advice a suggestion of a benefit in the particular case, a confession by reason of such advice and suggestion is incompetent. The situation in which the plaintiff in error was placed and the circumstances surrounding him at the time were proper to be taken into consideration by the court in determining the competency of the confession, in-

cluding his youth and inexperience, his character, his intelligence, his strength of intellect, his knowledge or ignorance, and the fact that he was detained in prison and was interrogated by the police officer who held him in custody. The fact that he was under arrest would not of itself make his confession incompetent. (*Brown* v. *United States,* 35 App., D. C. 548; *State* v. *Bennett,* 143 Iowa, 214; *Toomer* v. *State,* 112 Md. 285; *State* v. *Brooks,* 220 Mo. 74.) This is so even though the arrest was illegal. (*State* v. *Rafferty,* 252 Mo. 72; *Gilmore* v. *State,* 3 Okla. Crim. 434; *Balbo* v. *People,* 80 N. Y. 484.) The question of admissibility is finally whether, considering all the circumstances of this particular case, they were such that the statement of the plaintiff in error might have been induced by their influence to make a false confession. The judge who tried the case had before him the three witnesses who were present at the time, he had the benefit of seeing and hearing each of them, and his opportunity for determining the weight to be given the testimony of each greatly exceeded ours. So far as we can judge from the record, we see no reason to disagree with his conclusion that the confession was admissible in evidence. It was sufficient to sustain the conviction unless the defense of an alibi was sustained.

The evidence in regard to an alibi consisted of the testimony of the superintendent of the Hero Furnace Company that the records of the factory showed that plaintiff in error worked nine hours on February 11, 1920, beginning at seven in the morning and quitting at 4:30, and that the record for the week ending February 12 showed that he was off one day the first of that week, probably the 6th. The superintendent had no personal knowledge of the fact. The foreman, James Pepper, turned in the record to the office, and the record would show if a man was off a half hour but would not show what part of the day it was. Pepper did not testify. He was not foreman at the time of the trial but H. J. Bremlin was. He was working for the

Hero Furnace Company on February 11, 1920, and on that day was working in the same room with the plaintiff in error. His testimony was that while he was working in the same room with the plaintiff in error he did not remember the date of February 11, 1920, but the plaintiff in error was off only once, which was some time in the summer, in the afternoon, at the time he was hurt. Antonio Aykins was a sheet-metal worker at the Hero Furnace Company who started in the first part of February and was off probably a day. He knew the plaintiff in error but did not know whether he was there on February 11 or not. As far as he knew, Max worked every day and was only off one time when he was hurt. Robert Clutterham also worked at the Hero Furnace Company on February 11, 1920, and knew the plaintiff in error and worked in the same room with him. The plaintiff in error worked every day, that he knew of. He did not know of his being absent at any time,—did not miss him from the shop. He would not swear that plaintiff in error did not go out at any time but did not think he did. He did not miss him.

This evidence is insufficient to cause a reasonable doubt of the defendant's guilt. It was given a year after the date in question. There had been nothing to call the witnesses' attention to the particular date. Their testimony is based on their recollection of the regularity of the plaintiff in error's attendance. There was no actual recollection that the plaintiff in error worked the whole day on February 11, 1920, or that he worked at all that day. The record kept as testified to by the superintendent shows that he was absent one day of that week, but the keeper of the record did not testify and the superintendent had no knowledge of the fact.

It is argued on behalf of the plaintiff in error that a defendant could not be convicted of contributing to the delinquency of a child unless it was proved beyond a reasonable doubt either that the child was delinquent or became delinquent by virtue of the defendant's acts. Section 1 of

the statute of June 25, 1915, (which is paragraph 42*hm* of the Criminal Code,) defines the term "delinquent child," and section 2 (which is paragraph 42*hn* of the Criminal Code) provides that any person who shall knowingly or willfully do acts which directly tend to render any such child so delinquent shall be deemed guilty of the crime of contributing to the delinquency of children. It is not necessary that the child who is the subject of the crime should be a delinquent child or should become a delinquent child. The crime is complete when acts are committed which directly tend to render the child delinquent.

Complaint is also made that after judgment was rendered the plaintiff in error moved the court to fix the bail bond on which the defendant could be released pending the review of the case by the Appellate Court, and the bond was fixed at $5000, but two days later the court, without any notice, vacated this order. The record shows that the plaintiff in error prayed an appeal, which the court allowed upon the filing of a bond for $5000. This appeal was inadvertently allowed, for no appeal is permitted in criminal cases. They can be reviewed only by a writ of error, and the court properly vacated the order. The trial court had no authority to admit the defendant to bail pending the review of the cause in the Appellate Court. That can be done only by the Appellate Court upon granting a *supersedeas*. The plaintiff in error made no motion to suspend the issuing of the *mittimus* to a reasonable time to permit him to apply to the Appellate Court for a *supersedeas* and to admit him to bail in the meantime, as provided by paragraph 468*a* of the Criminal Code. (Hurd's Stat. 1921, p. 1158.)

In view of the plaintiff in error's confession and the unsatisfactory evidence in regard to the alibi the court was justified in finding the plaintiff in error guilty, and the judgment will be affirmed.                *Judgment affirmed.*

Mr. CHIEF JUSTICE THOMPSON, dissenting.