(No. 36912.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GILBERT JOE, Plaintiff in Error.

*Opinion filed September 29, 1964.*

SHELDON K. RACHMAN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and WILLIAM J. NELLIS, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

In August, 1956, the defendant, Gilbert Joe, was indicted in the criminal court of Cook County for the murder

of Andrew Wiater. On arraignment he pleaded not guilty, waived a jury, and was tried before the court. He was found guilty and sentenced to the penitentiary for life.

. ˙ He contends here that his conviction should be set aside for two reasons, first, because the court improperly admitted into evidence certain purported confessions, and second, because the court erred in denying the defendant's motion for acquittal or for a new trial because of the State's failure to properly identify the body of the deceased.

The facts in the case here disclose that on the night of July 6, 1956, a passing motorist discovered Andrew Wiater collapsed on a street in Chicago Heights; his neck was slashed and he was covered with blood. He was removed by ambulance to a hospital where he subsequently died. Ten days later the defendant was apprehended in Missouri in the possession of Wiater's automobile. From there he was returned to Chicago Heights, arriving there about 4:30 or 5:00 P.M., Monday, July 16, 1956. The following day, at about 1:00 A.M., a member of the police force, Lieutenant Ezell Irons, had a conversation with the defendant at the police station. At that time the defendant made a written statement, in his own handwriting, which the State contends was a voluntary confession by defendant of his commission of the murder, and it was admitted into evidence in this case. The defendant claims this was error and is one of the two reasons urged for the reversal of this cause. ˙

There is no dispute on the part of the parties but that the defendant made a statement which was written out by him in his own hand and which, if true, was sufficient to prove the guilt of the defendant. It is also stipulated that no one participated in the taking of said statement except Lieutenant Irons, who began interrogating the defendant around 1:00 A.M., Tuesday, July 17, 1956. The police lieutenant appeared as a witness for the State and testified that the defendant was not beaten, threatened, or promised leniency to induce him to confess. .

On cross-examination Lieutenant Irons did admit that the defendant at first refused to give any statement; that thereupon he did advise the defendant that if he made a statement that he would help himself more by telling the truth than by telling a lie and that he had been caught in Wiater's automobile and that he might as well make a statement. Lieutenant Irons denied that he advised defendant that a statement would help him, but he could not remember whether he told the defendant he could help himself by making a statement. The witness also testified that he furnished the defendant pencil and paper upon which the purported confession was written. Lieutenant Irons also stated that he advised the defendant to write the confession on said paper furnished to him, but if at any time during the time he was writing the statement he wanted to change his mind he could do so and not make the statement. Also, if after the statement was completed he did not want it presented, he was under no obligation to give it to him (the lieutenant.) In the statement, in the handwriting of the defendant, also appears the statement that he made the statement without any threats or promises being made to him or any beating inflicted upon him.

The defendant at the trial gave a somewhat different version concerning the above confession. He testified that he was questioned all Monday night by Lieutenant Irons and that Irons knocked him to the floor with his fists because he refused to make a statement. He further testified that Irons advised him that it would be easier in every way if he made a statement. On the next night the defendant says, Irons resumed his questioning, but he refused to make any statement or discuss the case. Finally, however, he did tell the police officer a story of the fatal knifing consistent with his trial defense of accidental homicide, but that Irons refused to accept the same, and thereupon began to beat him on and about the head and hands with jail keys. Thereupon he succumbed and stated to Irons, "I will tell

you anything to keep this beating off me." He thereupon, so he states, accepted the paper and pencil and wrote out what is designated as his first confession.

He further states that during the time he was writing, the police officer Irons was present and told him to write several things that he said would help him, among which was that the murder was not premeditated, but was the result of a sudden impulse while robbing him. He also says that Lieutenant Irons spelled out certain words used in the confession and advised him how to begin and end the statement.

On Wednesday morning following the statement he was taken to the State's Attorney's office for further questioning. At that time he made no complaint of any beating having been administered to him on the previous two nights, nor did he at that time deny any of the statements embraced in his confession. There he gave a question and answer statement. When the same was offered in evidence the defendant objected to it for the reason he asserted that it was the product of the coercion imposed to obtain the handwritten confession. The trial court held that the handwritten confession was admissible in evidence and, consistent with its ruling on the first confession, the court also admitted the question and answer interview given to the assistant State's Attorney.

While, of course, the law is that only voluntary confessions may be used as evidence against an accused, and that confessions procured through force, threats or offers of leniency are inadmissible, however, the question of the voluntary character of a confession is for the trial court to determine, and unless it can be said that the decision of the trial court is manifestly against the weight of the evidence this court will not disturb the finding of said court. *People* v. *Weger*, 25 Ill.2d 370; *People* v. *Townsend*, 11 Ill.2d 30; *People* v. *Gavurnik*, 2 Ill.2d 190.

Although in the court below the defendant challenged

his statements because he was beaten and abused and also offered leniency, here he, in fact challenges their voluntariness only because he was allegedly told it would be easier for him to confess. No evidence was offered to the court by the defendant that any marks were made on his body as a result of said beating, nor did he at his appearance before the assistant State's Attorney on the morning after the alleged beating make any complaint of the same. And in passing we note that Lieutenant Irons, the alleged assailant, categorically denied harming defendant in any manner.

Lieutenant Irons testified that he advised defendant to tell the truth if he made a statement. Language in *People* v. *Heide,* 302 Ill. 624, suggests that an exhortation to an accused to tell the truth, without more, rendered any subsequent confession involuntary and inadmissible. However, later decisions of this court expressly reject this construction and it is established that mere urging to tell the truth does not taint a confession. *People* v. *Klyczek,* 307 Ill. 150; *People* v. *Ardelean,* 368 Ill. 274.

Assuming that the statement was made as contended by defendant, by his own testimony it did not induce him to confess. The alleged suggestion of leniency was made Monday night when defendant remained steadfast in his decision not to discuss the homicide. As we said in *People* v. *Weger,* 25 Ill.2d 370, the illegal modes of interrogation must prompt the challenged confession to render it inadmissible; their occurrence in the course of interrogation alone and without relation to the confession does not make the confession involuntary and inadmissible. We cannot say on the record here that the trial court's finding that defendant's handwritten confession was voluntary is against the manifest weight of the evidence. It necessarily follows that admission of the second confession, in view of the objection made thereto, was proper also.

Defendant also complains that the trial court wrongfully admitted into evidence his confession made in the State's

Attorney's office, because the prosecution failed to call all the witnesses thereto, or satisfactorily account for their absence. The second confession was challenged because of the coercive tactics allegedly used to obtain the first; defendant did not and does not contend he was forced, threatened or promised leniency when he was interviewed by the assistant State's Attorney. In *People* v. *Sims,* 21 Ill.2d 425, we held that the rule that all witnesses to a confession, challenged as involuntary, must be produced or their absence satisfactorily explained, was qualified to the extent that the witnesses must be material; they must have been present when alleged acts of coercion occurred. The defendant here does not contend that any coercive acts occurred in the State's Attorney's office, consequently it was not necessary that the prosecution produce all who were present there.

Lastly, defendant contends that the prosecution failed to establish the *corpus delicti;* there was no showing that the cadaver upon which the coroner's physician performed his autopsy was that of Andrew Wiater. As part of the prosecution's case it was stipulated by the parties that the coroner's physician, if called as a witness, would testify that he performed an autopsy on the body of Andrew Wiater and that in his opinion he died from a stab wound in the neck. A stipulation is to be given its natural and ordinary meaning; to construe the stipulation as reserving the issue of identification of the cadaver in view of the recital that it was that of Andrew Wiater would do violence to its plain meaning.

The action of the trial court here challenged was correct. It further appears that defendant's guilt of what could only be described as a vicious murder was amply proved. The judgment of the criminal court of Cook County was correct and is hereby affirmed.

*Judgment affirmed.*