(No. 45366.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIE TAYLOR, Appellant.

*Opinion filed September 17, 1974.*

GOLDENHERSH, J., concurring.

Paul Bradley, State Appellate Defender, of Chicago (Margaret Maxwell, Assistant Defender, of counsel), for appellant, and Willie Taylor, *pro se.*

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Patrick T. Driscoll, Jr., Jerome Charles Randolph, Kenneth L. Gillis, Barry Rand Elden, Assistant State's Attorneys, and Stephen Y. Brodhay, Senior Law Student, of counsel), for the People.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Willie Taylor, was charged in indictments returned in the circuit court of Cook County with murder, attempted murder, aggravated battery, and arson. After a trial by jury, he was convicted of arson and sentenced to the penitentiary for a term of not less than 25 years nor more than 50 years. The appellate court affirmed the conviction but reduced the minimum sentence to not less than 14 years (*People v. Taylor* (1972), 6 Ill. App. 3d 343). We granted leave to appeal.

The conviction stems from a fire which occurred in the early morning hours of December 27, 1968, at the home of the defendant and his then wife, Burnette Taylor, at 5029 West Monroe Street in Chicago. The fire was started by an object which was thrown through a second-story bedroom window, and it resulted in the death of Orgee Wright, the 14-year-old son of Burnette Taylor by a previous marriage, and the severe burning of Mrs. Taylor's other son by a previous marriage, 20-year-old Raymond Smith.

Since the defendant does not contest the sufficiency of the evidence to sustain his conviction for arson, it is necessary to state only that evidence which relates to his contentions on appeal. Those contentions center upon the admissibility of two statements, one oral and one written, made by the defendant to police officers on the evening of December 27, 1968, in which he admitted paying someone $20 to throw a lighted bottle of gasoline into the bedroom of his home in order to "scare" his wife. Prior to trial the

defendant had moved to suppress these statements, but after a full evidentiary hearing the motion was denied. He contends: (1) that the statements were obtained in violation of due process of law in that they were induced by false statements of the police that a lie detector test could prove his innocence; (2) that the statements were the product of questioning during a period of illegal detention in violation of the fourth amendment to the Constitution of the United States; and (3) that the statements were obtained in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, in that they were obtained through interrogation which continued after he had invoked his right to remain silent.

Concerning the defendant's contention that the statements were the product of questioning during an illegal detention, the record shows that he was arrested without a warrant by a Chicago police officer about noon on December 27, 1968, at his place of employment on the north side of Chicago. The arresting officer testified that he arrested the defendant on the basis of a police radio call that "Willie Taylor" was wanted for investigation of arson. It is apparent from the testimony of Detective Moravec, one of the investigating officers, that the police radio call was based on information he had received from Mrs. Taylor to the effect that the defendant had previously threatened to burn the house down, and further information that a man fitting the description of the defendant was seen in the area seconds before the fire occurred. We hold, therefore, that the arresting officer had reasonable grounds to believe that the defendant had committed the offense of arson and that his arrest was lawful. See *People v. Jones* (1967), 38 Ill.2d 427; *People v. Glenn* (1966), 35 Ill.2d 483.

In order to decide the defendant's remaining contentions concerning the admissibility of his statements it is necessary to discuss the circumstances under which those

statements were made. At the hearing on the motion to suppress, the evidence showed that after the defendant was arrested he was taken to a north-side police station where he was placed in the lockup. The arresting officer testified that he did not advise the defendant of his constitutional rights, but that the "lockup-keeper" did when the defendant was being placed in a cell. The defendant remained at that station for 2 or 3 hours during which time he was not questioned. He was then taken to a station on the west side of the city, closer to the scene of the fire. There he was interrogated by three police officers, Detectives Moravec, Berndt, and Walter. All three officers testified that before the interrogation began Detective Moravec advised the defendant of his constitutional rights and asked him if he understood those rights, and that the defendant responded that he did. Detective Moravec also testified that on two subsequent occasions during the interrogation the defendant was warned of his constitutional rights, and that on one of these occasions the defendant answered that he knew his rights.

The interrogation began in the main room of the station, but, because of the distraction caused by the activity there, was continued in an adjacent "roll call" room. After some interrogation there, the "roll call" room was needed for other purposes and the officers took the defendant to an interrogation room on the third floor of the station house. The defendant was offered sandwiches and coffee, but testified that he refused the offer because he did not drink coffee. During that period, a cousin of the defendant, whom the defendant said had been with him on the previous night, was brought to the station. He stated, however, that he was not with the defendant after 10 or 10:30 p.m.

It is uncontroverted that during this period the defendant answered most of the officers' questions, denied any knowledge of the fire, and asserted an alibi; however, one police officer testified that the defendant occasionally

did not answer when certain questions were asked relating to the fire.

Two of the officers testified that the defendant was asked if he would take a polygraph test and was told that it was one way he might clear himself. They further testified that the defendant was told that the test was completely voluntary and that the results would be inadmissible in court. The third officer testified: "We told the defendant that if he was innocent, he could prove it by taking a test, a polygraph test. But he didn't have to if he didn't want to. It was of his own free will. If he wanted to prove his innocence and get the whole thing over with, we told him we would take him downtown and take a test."

The defendant consented to take the test and was taken to police headquarters at 1121 South State Street. Detective Berndt took the defendant to the police department crime laboratory located in that building, while Detectives Moravec and Walter drove to the south side of Chicago to check further on the defendant's alibi. The polygraph examiner, a Chicago police officer, testified at the hearing on the motion to suppress that before administering the test he informed the defendant that he did not have to take it and asked him whether he understood his constitutional rights, to which the defendant replied that the police had told him "all that" and that he wanted to take the test. The examiner further testified that the defendant then read and signed a "Waiver of Liability" form, after which he was again informed that he did not have to take the test and was told that most individuals who are tested are shown to be telling the truth. It was stipulated that the examiner would testify on rebuttal that he also told the defendant, "You had better tell the story to protect yourself."

After preliminary conversation with the defendant, a series of five tests was administered and the results were analyzed. The tests were concluded about 7:50 p.m., and the defendant was then told by the examiner that he had

not "passed" the test. At that point the defendant admitted to the examiner that he had hired someone to start the fire, and a few moments later he made an oral statement to the same effect to the three detectives, all of whom had returned to headquarters. The defendant was then taken back to the west-side station, where he was again warned of his constitutional rights and questioned further about the fire. The questions and answers were typed by one of the detectives and the statement was signed by the defendant at approximately 9 p.m. In this written statement the defendant admitted that he had hired someone to throw a Molotov cocktail through the bedroom window of his home.

The defendant's version of the events leading up to his oral and written statements differed markedly from the version given by the police detectives and the polygraph examiner. He testified that he was never advised of his constitutional rights and that he was not told by the detectives that the polygraph examination was voluntary and that its results were inadmissible in court. He also testified that he confessed because he was afraid the policemen were going to beat him up if he did not confess. The trial court, however, disbelieved the defendant's testimony and believed that of the State's witnesses; it denied the motion to suppress and found that the defendant was warned of his rights on more than one occasion, that there was no coercion on the part of the police, and that the defendant voluntarily took the polygraph test, after which he made an unsolicited oral statement to the police officers.

In view of the nature of the crime being investigated and of the investigation being conducted, we hold that the period of detention which preceded the defendant's admissions in this case was not unreasonable. See *People v. Brooks* (1972), 51 Ill.2d 156; *People v. Mallett* (1970), 45 Ill.2d 388.

In addition to his contentions concerning the legality

of his arrest and detention, the defendant contends that his motion to suppress his statements should have been granted on other grounds. He contends that the statements were induced by false statements of the police officers that a lie detector test could prove his innocence, and by the false statement of the polygraph operator that most people who take the test are shown to be telling the truth. The defendant argues that the statements of the officers led him to believe that the only way he could get out of the police station was by taking the test to prove his innocence to the police officers. An examination of the record, however, shows that there were no statements made by the police officers from which the defendant could reasonably infer that passing the polygraph test was the only way he could be cleared of suspicion, and the defendant himself testified that he agreed to take the test because he thought it would prove that he was telling the truth. The polygraph operator testified that he told the defendant that "most of the individuals that are tested by this means are shown to be telling the truth. The results indicate that they are telling the truth." We cannot understand how this statement, based as it was upon the experience of the operator, could possibly have misled the defendant.

The defendant also points to the fact that the polygraph examiner told him that "You had better tell the story to protect yourself," and argues that this was an implied threat which made the subsequent statements inadmissible. In support of this argument he relies on *People v. Klyczek* (1923), 307 Ill. 150. There the court said that a statement made by a police officer to an accused that he had "better tell the truth," when coupled with a suggestion of a benefit in the particular case, renders a subsequent confession inadmissible. But in that case the court also stated:

> "*** It is not reasonable to suppose that advice to one accused of crime that it is better for him to tell the truth would of itself be an

inducement to him to tell an untruth or would alone be a sufficient inducement to make a statement falsely confessing crime. Mere exhortation to tell the truth will not make a confession afterward made inadmissible, but the statement that it is better to tell the truth may be made under such circumstances as to make a confession afterwards made incompetent." 307 Ill. at 154.

The defendant admits that the statement in this case, standing alone, is ambiguous, but urges that the ambiguity is removed and the statement shown to be coercive when it is taken with the defendant's testimony that the examiner also told him that the officers were mad at him because he had lied and that there was "no telling what they'll do to you." The defendant, however, overlooks the fact that the trial court, by its ruling, showed that it did not believe that the latter statements had been made to him. What we have, then, is no more than the examiner's statement to the defendant that he had better tell the story to protect himself. In *People v. Joe* (1964), 31 Ill.2d 220, 225, we said:

"*** Language in *People v. Heide,* 302 Ill. 624, suggests that an exhortation to an accused to tell the truth, without more, rendered any subsequent confession involuntary and inadmissible. However, later decisions of this court expressly reject this construction and it is established that mere urging to tell the truth does not taint a confession. *People v. Klyczek,* 307 Ill. 150; *People v. Ardelean,* 368 Ill. 274."

We see no reason to disturb the trial court's finding that the defendant's statements were voluntarily made and were not the product of coercion.

The defendant's final argument with regard to the admissibility of his statements is that they were obtained by interrogation which continued after he had invoked his right to remain silent. The record does not support this

contention. In fact, the defendant did not testify that he ever remained silent. The only evidence of this sort came from the testimony of one of the interrogating officers who said that on a few occasions the defendant stood mute when asked certain questions relating to the fire. The defendant initially responded to questions of this sort, and his subsequent refusal to reply to an isolated question cannot, without more, be considered an indication that he intended to invoke his right to remain silent.

In addition to the contentions relating to the admissibility of his statements, the defendant, in a *pro se* brief, contends that the evidence was insufficient to establish the *corpus delicti* because the only evidence implicating him in the crime was his confession. But the identification of the defendant as the person criminally responsible for the offense is the ultimate issue in a criminal case, and not part of the proof of the *corpus delicti*. So long as the *corpus delicti* is proved, a confession tending to show that the defendant committed the crime will justify a conviction. (*People v. Norcutt* (1970), 44 Ill.2d 256, 263.) In this case there is no question but that the home of the defendant and his wife was damaged by fire, and that the fire was started by an object which exploded after it had been thrown through the window. The *corpus delicti* was thus established, and the defendant's contention fails.

The defendant's final contention is that his sentence should be reduced to conform to the provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—1 *et seq.*), which became effective after he was convicted and sentenced, but while his case was pending upon direct review. The trial court sentenced him to imprisonment for not less than 25 nor more than 50 years, and the appellate court reduced the minimum term to 14 years in the penitentiary. Each of these sentences was within the permissible limits when it was imposed. But the Unified Code of Corrections classified arson as a Class 2 felony, which carries a penalty of not less than 1 nor

more than 20 years in the penitentiary. (Ill. Rev. Stat. 1973, ch. 38, pars. 20—1, 1005—8—1(b)(3), (c)(3).) In *People v. Chupich* (1973), 53 Ill.2d 572, and *People v. Harvey* (1973), 53 Ill.2d 585, we held that the penalties provided in the Unified Code of Corrections are applicable to cases pending upon direct appeal. Since this case was pending upon direct appeal on the effective date of the Unified Code of Corrections, that act governs the defendant's sentence.

The judgment of the appellate court affirming the defendant's conviction is affirmed, and the cause is remanded to the circuit court of Cook County with directions to resentence the defendant in accordance with the provisions of the Unified Code of Corrections.

*Affirmed and remanded, with directions.*

MR. JUSTICE GOLDENHERSH, concurring:

I cannot agree that the warrantless arrest of the defendant was lawful. The testimony shows that he was arrested at noon, on Friday, at his regular place of employment. It cannot be determined from the record how long the police had been possessed of the knowledge which allegedly gave them reasonable grounds to believe that defendant had committed the offense, but the testimony would support the conclusion that the arrest was made at noon on the basis of information obtained in the early morning hours. I fail to see why, instead of effecting a warrantless arrest at noon, the police did not first obtain a warrant and arrest the defendant at 12:15.

The factual situations in *People v. Jones,* 38 Ill.2d 427, and *People v. Glenn,* 35 Ill.2d 483, cited in support of the conclusion that the arrest was lawful are so completely different from the facts shown by this record that no further discussion of those cases is warranted.

In my opinion, *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, leaves no doubt

that the same rationale which proscribes an unreasonable warrantless entry to search for evidence serves to prohibit an unreasonable warrantless arrest. Applicable to both is the following language:

> "Thus the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption *** that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.' '' (403 U.S. 443, 454-5, 29 L. Ed. 2d 564, 576, 91 S. Ct. 2022, 2032.)

This record shows no basis for exemption, and I would hold that the warrantless arrest of defendant was unlawful.

Despite the unlawful arrest I concur in the result for the reason that the record shows affirmatively that prior to making the inculpatory statements the defendant was adequately advised of his right to remain silent and that these admonitions served to break the causal chain so as to sufficiently attenuate and dissipate the taint of the unlawful arrest. *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.