THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JERRY BLACKMAN, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WALLACE RUTH, Defendant-Appellant.

First District (5th Division)　No. 62461

Opinion filed November 24, 1976.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Timothy Quinn, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendants were each indicted for two counts of aggravated battery and one count of armed robbery. Following separate jury trials, Blackman was convicted of aggravated battery causing great bodily harm (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(a)) and aggravated battery by use of a deadly weapon (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(b)(1)), and Ruth was convicted of both aggravated batteries and of armed robbery. (Ill. Rev. Stat. 1973, ch. 38, par. 18—2.) Blackman was sentenced to a term of not less than 3 years, 4 months nor more than 15 years on the aggravated battery causing great bodily harm conviction, and Ruth was

sentenced to a term of not less than 10 years nor more than 25 years on the armed robbery conviction.

In this joint appeal, both defendants contend: (1) they were denied fair trials by the State's closing arguments; and (2) multiple convictions are improper when each arose from a single transaction or course of conduct.

On August 19, 1973, at 8:45 p.m., Lawrence Mitchell was walking near 8100 South Western Avenue when defendants approached him. Blackman pressed a knife into Mitchell's ribs and demanded Mitchell's money. When Mitchell resisted, he was wrestled to the ground and one of the defendants stabbed him in the eye. Blackman then took $12 from his right front pocket and a wristwatch from his left arm. When Blackman felt Mitchell's wallet in his left pocket, he passed the knife to Ruth and told him to cut the wallet out. As the knife was being passed, Mitchell grabbed it, threw it away, and yelled for help. Defendants then kicked Mitchell and Ruth hit him on the head with a two by four approximately 10 times. Mitchell continued to scream and defendants fled. Later that evening Mitchell identified both defendants in a lineup at the police station.

Chicago police officer John Kosiewicz testified that he observed Blackman departing the area in a 1962 Pontiac and chased him into a dead end alley near 8100 South Bell. He observed Blackman's face as they both exited their vehicles, but lost Blackman during a chase through some nearby bushes. A subsequent license check showed the Pontiac was registered to a Lorine Blackman who lived at 5201 South Federal Street.

Chicago police officer Anthony Zawilla testified that he and his partner, Edward Kevin, observed Ruth running on 83rd Street approximately one mile west of the scene. Ruth was not wearing a shirt. He arrested Ruth in a nearby alley and informed him of his constitutional rights. He recovered a pocket knife with reddish brown spots on the blade. As they proceeded to the police station, Ruth admitted that he and Jerry Blackman, who lived at 5201 South Federal, committed the crime, and that Blackman had the money. Officer Edward Kevin testified in rebuttal at the Ruth trial and corroborated Zawilla's testimony.

Officer Wilburt Jamison testified that during his investigation of the incident he arrested Blackman at 5201 South Federal. He observed Mitchell identify both defendants at the lineup.

Defendant Ruth testifying in his own behalf stated that he left his home at 5201 South Federal to visit his aunt, and, by mistake, left the bus at the wrong stop. He was accosted by a group of whites who hit him and tore off his shirt. After he was arrested in an alley near 79th Street, he was advised "about some constitutional right." He denied giving a confession, implicating Blackman, and seeing the police recover a pocketknife from his person.

During closing argument at Ruth's trial, the prosecutor made several remarks which Ruth contends in this appeal were error, but which he failed to object to during the trial or specifically refer to in his post-trial motion. Over Ruth's objection, the prosecutor was allowed to argue that if the jurors acquitted Ruth they should not "let this man beat you back to your cars."

Similarly, several remarks made during closing argument by the prosecutor in Blackman's trial were not objected to nor specifically included in the post-trial motion. Over Blackman's objection, the prosecutor also argued that Blackman and Ruth were "buddies" who "went out that night and * * * tried to stick up a man" and also that if the jurors acquitted Blackman " * * * I strongly suggest, folks, that you stay away from 81st and Western * * *."

OPINION

Defendants contend they were denied fair trials by the State's closing arguments. We note at the outset that remarks not objected to at trial nor argued in a post-trial motion are waived for review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Bell* (1975), 27 Ill. App. 3d 171, 326 N.E.2d 507.) Moreover, since the evidence of defendants' guilt is not closely balanced, the remarks are not subject to review as plain error under Supreme Court Rule 615(a). (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a).) For this reason, we will not discuss in this appeal those isolated remarks which neither defendant contested in the trial court.

■■ Blackman contends the prosecutor's statement that Blackman and Ruth were "buddies" who intended "to stick up a man" that night was reversible error. To the contrary, the prosecutor could properly argue from evidence which showed Ruth's own confession and implication of Blackman and their similar residence at 5201 South Federal and theorize that defendants were friends who intended to commit a robbery on the night in question. See *People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537.

■■■ However, we believe it was error for the prosecutors to argue that the jurors, if they acquitted, should avoid the area of 81st and Western and should not let Ruth beat them back to their parked cars. Appeals to the prejudices and fears of the jurors are clearly prohibited. (*People v. Davis* (1970), 46 Ill. 2d 554, 264 N.E.2d 140.) The prosecutors' remarks here were clearly designed to appeal to the jurors' fears, and cannot be justified as exhortations to fearlessly administer the law. Nonetheless, unless the error is a material factor in a defendant's conviction, the trial court's judgment will not be reversed on appeal. (*People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771, *cert. denied*, 396 U.S. 1016, 24 L. Ed. 2d 507, 90 S. Ct. 578.) An accused is guaranteed a fair

trial, not one totally free from error. (*People v. Ashley* (1960), 18 Ill. 2d 272, 164 N.E.2d 70, *cert. denied*, 363 U.S. 815, 4 L. Ed. 2d 1157, 80 S. Ct. 1255.) Thus, when the evidence adduced is so overwhelming that a conviction would, of necessity, result even if the error were eliminated, a court of review will not reverse the trial court's judgment. *People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590, *cert. denied*, 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226; *People v. Naujokas* (1962), 25 Ill. 2d 32, 182 N.E.2d 700; *People v. Smith* (1972), 6 Ill. App. 3d 259, 285 N.E.2d 460.

■■ In this appeal neither defendant has contended that he was not proved guilty beyond a reasonable doubt. Indeed, we believe Ruth's confession, Mitchell's identifications, the recovery of the pocketknife, and the policemen's testimony present overwhelming evidence of defendants' guilt. Consequently, we believe beyond a reasonable doubt that the prosecutors' isolated remarks did not contribute to the guilty findings, and that the verdicts would not change if the errors were removed through new trials. For this reason, the remarks were harmless errors at worst and we reject defendants' initial contentions.

Defendants also contend multiple convictions are improper when each arose from a single transaction and course of conduct. The State has conceded on appeal that Ruth's aggravated battery by use of a deadly weapon conviction was the same force necessary to effectuate the armed robbery, and, therefore, should be vacated. (See *People v. Ashford* (1974), 17 Ill. App. 3d 592, 308 N.E.2d 271.) Accordingly, we will reverse the judgment of the circuit court on Ruth's conviction for aggravated battery by use of a deadly weapon.

A defendant may not be convicted of multiple offenses which arise from a single act or course of conduct. (*People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.) However, where more than one offense arises from a series of closely related acts and the crimes involved require different elements of proof, multiple judgments are permissible. *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819.

The trial court in sentencing Blackman stated "That is also only one offense, primarily the offense of aggravated battery causing great bodily harm." We agree and believe that it was error to enter judgment on the remaining conviction for aggravated battery by use of a deadly weapon. In considering defendant's course of conduct for purposes of the *Lilly* rule, section 2—4 of the Criminal Code of 1961 allows an analysis of "* * * an act *or series of acts, and the accompanying mental state.*" (Ill. Rev. Stat. 1973, ch. 38, par. 2—4.) (Emphasis added.) Where defendant's series of acts were not "independently motivated or otherwise separable," multiple convictions for aggravated battery cannot be sustained. (*People v. Fleming* (1975), 36 Ill. App. 3d 612, 345 N.E.2d 10; *People v. Hines* (1975), 34 Ill. App. 3d 97, 339 N.E.2d 489.) Here, the evidence shows

Blackman was engaged in a series of acts all designed to subdue the victim and effectuate the robbery. Consequently, the acts were not independently motivated and Blackman's conviction for aggravated battery by use of a deadly weapon must be reversed.

■■ Similarly, Ruth's remaining conviction of aggravated battery causing great bodily harm was part and parcel of a general intent to subdue and rob Mitchell. As in *People v. Stewart* (1970), 45 Ill. 2d 310, 259 N.E.2d 24, and *People v. Redmond* (1974), 59 Ill. 2d 328, 320 N.E.2d 321, nothing appears in this record to suggest Ruth's beating Mitchell was independently motivated or otherwise separable from the armed robbery. Unlike *People v. Johnson* (1971), 3 Ill. App. 3d 19, 278 N.E.2d 837, and *People v. Baker* (1969), 114 Ill. App. 2d 450, 252 N.E.2d 693, where the robberies were completed before the acts constituting the aggravated batteries occurred, the instant case shows a continuing effort to separate Mitchell from his property while the beating was being administered. For this reason, the acts involved were all in the same course of conduct and only the conviction for armed robbery can be sustained.

■■ Finally, in order to correct an error which appears in the report of proceedings of the Blackman trial and pursuant to our power under Supreme Court Rule 615(b) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)), we reduce Blackman's maximum sentence of 15 years imprisonment to a maximum term of not less than 10 years in compliance with section 5—8—1(b)(4) of the Unified Code of Corrections. Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(4).

For the reasons stated above, we affirm defendant Blackman's conviction for aggravated battery causing great bodily harm; reverse his conviction for aggravated battery by use of a deadly weapon and modify his sentence to a term of imprisonment of not less than 3 years, 4 months nor more than 10 years. We also affirm defendant Ruth's conviction for armed robbery and his sentence of not less than 10 years nor more than 25 years imprisonment, but reverse both of Ruth's aggravated battery convictions.

Affirmed in part; reversed in part; modified in part.

SULLIVAN and BARRETT, JJ., concur.