THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN DAVID THOMAS, Defendant-Appellant.

Third District   No. 80-637

Opinion filed August 5, 1981.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Following a jury trial in the circuit court of Peoria County, defendant John David Thomas was convicted of felony murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(3)) and attempt (armed robbery) (Ill. Rev. Stat. 1979, ch. 38, par. 8—4(a)). He was subsequently sentenced to the Department of Corrections for a term of 35 years, this sentence to run consecutively to an earlier sentence he received for armed violence. No judgment was entered on the attempt (armed robbery) conviction.

On appeal from his felony murder conviction, the defendant raises five issues for our consideration: First, whether his pretrial motion to suppress inculpatory statements should have been granted; second, whether reversible error was committed when the prosecutor improperly commented on facts not in evidence in his closing argument; third, whether the defendant's conviction must be reversed because his confession was not corroborated by sufficient proof of the *corpus delicti*; fourth, whether the trial court erred in failing to adequately state for the record its reasons for imposing a consecutive sentence; and finally, whether the trial court erred in improperly considering defendant's receipt of compensation for the crime as an aggravating factor in sentencing. We will discuss each of these five assignments of error in turn.

Defendant's first contention is that a written statement of June 15, 1979, and an oral confession of June 16, 1979, were obtained in contravention of his constitutional rights, and therefore should have been suppressed. We will first discuss the constitutional propriety of the June 15 interrogation which culminated in the giving of a written statement.

On June 15, 1979, the defendant was arrested in Florida by F.B.I. agents John Davis and Gerald Peralta for the Peoria murder of Gregory Sargent. According to the testimony of Peralta given at the hearing on

defendant's motion to suppress, immediately after his arrest the defendant was handcuffed and driven to F.B.I. headquarters in Miami. During this trip Thomas conversed freely with the F.B.I. agents. At headquarters, Thomas was processed, taken to an interview room, and given his *Miranda* warnings for the first time. The defendant signed a waiver form, and proceeded to answer the questions posed to him concerning his involvement in Sargent's death.

Agent Davis' testimony relating to the June 15 interrogation differed slightly from that given by Peralta. According to Davis, after Thomas was read his *Miranda* rights and signed the waiver form, he was asked if he wished to make a written statement. Thomas responded that he did not. The defendant was then told that if he made a statement, it would be written down and he could then make changes. Thomas agreed to this procedure and answered the agents' questions. Agent Peralta wrote down Thomas' answers. When the questioning terminated, Thomas read the statement, made alterations, and signed it.

■■ Relying on Agent Davis' version of the June 15 interrogation, the defendant takes the position on appeal that when he refused to make a written statement, he was exercising his right to remain silent. As a consequence, all questioning by Agents Davis and Peralta had to cease. (*Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321; *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; *People v. Faison* (1979), 78 Ill. App. 3d 911, 397 N.E.2d 1233.) According to the defendant, the agents' failure to scrupulously honor his expressed desire not to speak triggers imposition of the exclusionary rule. (*Michigan v. Mosley.*) However, the defendant did not object to the introduction of the June 15 statement into evidence in his pretrial motion to suppress, in his "trial brief" during the trial, or in his post-trial motion. As a result, the defendant has waived on appeal any error caused by the introduction of this statement. "This court has consistently held that the defendant must bring alleged errors to the trial court's attention so that the trial court can correct them. If the defendant fails to do so, the issue is deemed waived." (*People v. Gray* (1981), 95 Ill. App. 3d 879, 885, 410 N.E.2d 856, 861.) Although the waiver rule can be circumvented if the error constitutes plain error (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a)), such is not the case here. Contrary to defendant's assertions, we are of the opinion he did not indicate that he was exercising his right to remain silent. He merely indicated that he declined to make a written statement. Defendant's comment that he did not wish to make a written statement is not specific enough to constitute a demand that the interrogation cease. See *People v. Aldridge* (1980), 79 Ill. 2d 87, 402 N.E.2d 176; *People v. Troutman* (1977), 51 Ill. App. 3d 342, 366 N.E.2d 1088.

Defendant also contends that the June 16 oral confession was

obtained in contravention of his constitutional rights. At the hearing on the motion to suppress, Agent Davis, Peoria Police Officer Charles Cannon, and the defendant gave differing versions of the June 16 interrogation. According to Davis, the interrogation commenced with Cannon reading Thomas his *Miranda* rights. After reading the defendant his rights, Cannon told him he had been implicated in the Sargent shooting, and asked him if he wanted to make a written statement. Thomas replied he did not wish to do so without an attorney. Cannon then ceased asking Thomas any questions. After a period of time not longer than a few minutes, Thomas asked Cannon what Gary Willingham and Glen Patton, two other suspects in the Sargent shooting, had said. At this time Cannon allowed Thomas to read Patton and Willingham's statements. As Thomas read the statements, he stated they were not true and wanted to return to Peoria "to straighten things out." Cannon then re-read the defendant his *Miranda* rights, and asked Thomas if he wished to make a statement. The defendant replied that he did not want to make a written statement, but did want to tell his version of the Sargent shooting. He then gave the inculpatory oral statement that he sought to have suppressed.

According to Officer Cannon, after he read Thomas his *Miranda* rights and the defendant agreed to talk he allowed Thomas to read the statements of Patton and Willingham. Thomas read the statements, and then told Cannon that he did not want to make a written statement without an attorney. Cannon told Thomas there would be no more questioning. Several minutes of silence passed. Thomas broke the silence by asking again what Willingham and Patton had said about his involvement in the offense. Cannon reread Thomas his rights, and related the substance of the statements. At this time Thomas agreed to talk. He made his oral confession after a third reading of his *Miranda* rights.

According to the testimony of the defendant, Cannon initiated the June 16 interrogation by confronting him with the substance of Willingham and Patton's statements. He then asked Thomas to make a written statement. At this time Thomas requested counsel. Cannon said there would be no more questioning and 90 seconds of silence ensued. Thomas then asked to read the statements of Willingham and Patton. After reading them, he returned them to Cannon, who again asked the defendant to make a statement. Thomas responded that he would talk once he obtained counsel. Cannon again stated there would be no more questions, and two minutes of silence followed. Cannon then began talking about Patton and a woman by the name of Shirley Johnson. Ultimately, Thomas admitted he shot Sargent accidentally during the course of an attempted armed robbery.

■■ In the very recent case of *Edwards v. Arizona* (1981), ___ U.S. ___, 68 L. Ed. 2d 378, 101 S. Ct. 1880, the United States Supreme Court held "that

when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, ° ° °, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." (___ U.S. ___, ___, 68 L. Ed. 378, 386, 101 S. Ct. 1880, 1885.) In the instant case, the trial court apparently rejected defendant's version of the June 16 interrogation, insofar as Thomas stated that Cannon reinitiated the interrogation of the defendant after he expressed his desire to see an attorney, and found that the defendant waived his right to counsel by voluntarily reinitiating the interrogation. On the basis of Davis and Cannon's testimony, we cannot say that the circuit court's conclusion was manifestly erroneous. (*People v. Gray* (1981), 95 Ill. App. 3d 879, 420 N.E.2d 856.) Both Davis and Cannon testified that after Thomas stated he wished to see an attorney, the questioning ceased. The silence which followed was broken when defendant inquired about the statements of Patton and Willingham which implicated him in Sargent's murder. This voluntary reinitiation of interrogation reflects a knowing and intelligent relinquishment of the sixth amendment right to counsel (*Edwards v. Arizona*; *People v. Sluder* (1981), 97 Ill. App. 3d 459, 423 N.E.2d 268). The motion to suppress defendant's oral confession made after the waiver of his right to counsel was properly denied.

The defendant's second issue is whether the prosecuting attorney erroneously commented on nonevidentiary facts in his closing argument. At trial, it was disclosed that the murder weapon, a .32 automatic pistol, was found wrapped in a nylon stocking mask in the Illinois River. The gun was found at about the same time that Cannon and Davis were questioning the defendant in Florida on June 16. Because Thomas told Davis and Cannon that the murder weapon was disposed of in this fashion, the prosecutor commented in his rebuttal argument that the discovery of the gun greatly corroborated Thomas' confession. The relevant portion of the prosecutor's argument follows, with the statements the defendant considers to be objectionable, emphasized:

"There was no mention at any time on the stand in his [Thomas's] testimony about the mask and the gun. *In fact, at the time he was being questioned, and the time he confessed, it couldn't have been put in his mind by Detective Cannon about the gun being wrapped in the nylon mask.* The gun had not been found. The gun was being found on this identical time while he was being questioned.

Remember the testimony of Officer Jatkowski? It was between one and two o'clock on June 16, 1979, in Peoria, when he found the gun, wrapped with this, and it was brought down to the police station. That's between two and three o'clock Miami time. There's a one-hour time zone. Between two and three o'clock Miami time on June 16, 1979, he was being questioned in a locked room, where no one else came in and was telling about this stocking being wrapped on that gun. *And Cannon couldn't have put those words in his mouth, because it had not been even found that way.* That corroborates the statement." (Emphasis added.)

On appeal, the defendant contends that these comments deprived him of a fair trial because they were based on facts not in evidence, and were in fact false. Before Cannon ever spoke to Thomas he knew from Gary Willingham the manner in which the gun was disposed. Further, in the statements Thomas read before making his confession, Willingham stated he obtained the gun and mask from defendant and threw them in the Illinois River near Peoria. Patton's statement, which was also read by Thomas, also states that Willingham threw the gun in the river. In short, the defendant argues on appeal that because he could have learned the location of the murder weapon from Cannon or from the contents of Patton and Willingham's statements, it was highly improper for the prosecutor to argue to the contrary.

■■ ■ A review of the record discloses that defense counsel neither objected to these allegedly improper statements at the time they were made, nor did he specifically assert that these comments were error in his post-trial motion. "Improper argument not objected to below is waived unless it is so prejudicial as to deny the defendant a fair trial or so flagrant as to threaten the deterioration of the judicial process." (*People v. Garza* (1981), 92 Ill. App. 3d 723, 731, 415 N.E.2d 1328, 1335; accord, *People v. Jackson* (1980), 84 Ill. App. 3d 172, 405 N.E.2d 448, *rev'd on other grounds* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.) We do not believe this alleged error is of such magnitude that a departure from the waiver rule is warranted, particularly in light of the considerable evidence of Thomas' complicity. "An accused is guaranteed a fair trial, not one totally free from error. [Citations.] Thus, when the evidence adduced is so overwhelming that a conviction would, of necessity, result even if the error were eliminated, a court of review will not reverse the trial court's judgment." (*People v. Blackman* (1976), 44 Ill. App. 3d 137, 140-41, 358 N.E.2d 50, 52; accord, *People v. Bianchi* (1981), 96 Ill. App. 3d 113, 420 N.E.2d 1187.) Such is the case here.

■■ Next, the defendant contends that his conviction must be reversed because his confession was not corroborated by sufficient proof of the *corpus delicti*. Though many of the cases disclose a considerable play on

words, we believe the applicable law was aptly stated in *People v. Perfecto* (1962), 26 Ill. 2d 228, 229, 186 N.E.2d 258, 258-59:

"The rule is that an uncorroborated confession is insufficient to convict, but the *corpus delicti* is not required to be proved beyond a reasonable doubt exclusively by evidence *aliunde* the confession or admissions of the accused, nor is it necessary that it be established by evidence other than that which tends to connect the defendant with the crime. [Citations.] 'The true rule is that if there is evidence of corroborating circumstances which tend to prove the *corpus delicti* and correspond with the circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the *corpus delicti* is sufficiently proved in a given case. (*People v. Borelli*, 392 Ill. 481.) The same evidence may be used to prove both the existence of the crime and the guilt of the defendant, the test being whether the whole evidence proves the facts that a crime was committed and that the accused committed it. *People v. Brown*, 397 Ill. 262.' *People v. Gavurnik*, 2 Ill. 2d 190, at 194."

(Accord, *People v. Jones* (1962), 26 Ill. 2d 381, 186 N.E.2d 246; *People v. O'Neil* (1960), 18 Ill. 2d 461, 165 N.E.2d 319; *People v. Nachowicz* (1930), 340 Ill. 480, 172 N.E. 812; *People v. Willingham* (1981), 92 Ill. App. 3d 1101, 416 N.E.2d 803, *appeal allowed* (1981), ___ Ill. 2d ___; 30 Am. Jur. 2d *Evidence* §1142 (1967).) "So long as the *corpus delicti* is proved, a confession tending to show that the defendant committed the crime will justify a conviction." *People v. Taylor* (1974), 58 Ill. 2d 69, 78, 317 N.E.2d 97, 102; *People v. Norcutt* (1970), 44 Ill. 2d 256, 255 N.E.2d 442.

*Corpus delicti* has been defined as "proof of the fact that a crime has actually been committed and that someone is criminally responsible therefor." (*People v. Cunningham* (1970), 122 Ill. App. 2d 222, 225, 258 N.E.2d 145, 146; see W. LaFave and A. Scott, Handbook on Criminal Law §4 (1972).) Considering Thomas' confession in conjunction with the evidence *aliunde* his confession, it is evident the *corpus delicti* was sufficiently established by the State. In his confession, Thomas stated that he, Patton and Willingham went to Sargent's Peoria apartment for the purpose of robbing him of money and narcotics. Sargent resisted, and during the struggle which ensued Thomas struck him over the head with a .32 automatic pistol. The gun accidentally discharged, fatally wounding Sargent. All three then ran out of the apartment building. The next day Patton called the defendant and told him to get ready to leave town. Shortly after Patton's call, Willingham arrived at Thomas' apartment. Thomas gave Willingham the murder weapon wrapped in a nylon stocking that he had used to disguise himself the previous night. After

Willingham left, Patton arrived and drove Thomas to the bus station, where he caught a bus to Atlanta, Georgia.

■■ Evidence *aliunde* Thomas' confession corresponds with the circumstances related therein. When Sargent was found in the hallway outside of his apartment, he was suffering from a bullet wound to the back of his head. A .32-caliber shell casing was found nearby, as well as a safety mechanism that appeared to have been broken off of a pistol. Cocaine was found in Sargent's apartment by the investigating officers. Further, when the murder weapon was eventually found it was wrapped in a nylon stocking. Taking the defendant's confession and the independent evidence corroborating his confession together, the evidence as a whole proves beyond a reasonable doubt that a murder was committed and that the defendant committed it *(People v. Perfecto)*. The *corpus delicti* having been sufficiently proved, defendant's confession justifies his conviction. *People v. Taylor* (1974), 58 Ill. 2d 69, 317 N.E.2d 97.

■■ As his fourth issue, the defendant contends that this cause must be remanded for resentencing because the trial court failed to set forth in the record of the sentencing hearing its reasons for imposing a consecutive sentence (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b)). Specifically, the defendant argues that the record is devoid of any finding by the trial court that the imposition of a consecutive sentence was necessary "to protect the public from further criminal conduct by the defendant." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b).) Although it is true that the trial court did not expressly make such a finding, in sentencing Thomas the court indicated that among the factors it was taking into account were the arguments of counsel. In his arguments at the sentencing hearing, the assistant State's attorney contended that the imposition of a consecutive sentence was necessary for the protection of the public. By incorporating and accepting the prosecutor's argument relating to consecutive sentencing, we are of the opinion that the statutory prerequisites for the imposition of a consecutive sentence were satisfied. There is enough in the record to enable this court " 'to determine just what went into the sentencing decision and whether it is consistent with the statutory objectives.' " *People v. Green* (1980), 83 Ill. App. 3d 982, 988, 404 N.E.2d 930, 934, quoting *People v. Meeks* (1979), 75 Ill. App. 3d 357, 366, 393 N.E.2d 1190, 1197.

Finally, the defendant urges this court to remand for a new sentencing hearing because the trial court improperly considered as an aggravating factor in sentencing determination the fact that defendant received compensation for committing the murder. Section 5—5—3.2(a)(2) of the Unified Code of Corrections provides that as an aggravating factor in sentencing, a court may consider whether "the defendant received

compensation for committing the offense." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(2).) Recently, since the imposition of sentence here, the Illinois Supreme Court in interpreting this statute held that "compensation for committing the offense under the statute applies only to a defendant who receives remuneration, other than proceeds from the offense itself, to commit a crime." *People v. Conover* (1981), 84 Ill. 2d 400, 405, 419 N.E.2d 906, 909.

■■ In the instant case, the lower court found that the defendant had received compensation for committing the crime under section 5—5—3.2(a)(2). The court stated, while obviously considering the aggravating factors in statutory order, "they [the defendant's acts] were done for the purpose of robbery, obtaining drugs. There was a financial gain supposedly involved." However, the financial gain or compensation to which the court referred is the receipt of the crime proceeds, *i.e.*, money and narcotics, not the receipt of some independent remuneration for committing the offense. Because under the supreme court decision in *Conover* the trial court erred in considering receipt of the crime proceeds as compensation pursuant to section 5—5—3.2(a)(2) of the Unified Code of Corrections, and we are unable to ascertain from the record the weight the circuit court gave this particular factor in aggravation in reaching its sentencing determination, we are constrained to remand this cause to the circuit court for a new sentencing hearing.

For the above reasons, the judgment of the circuit court is affirmed, but the cause is remanded for a new sentencing hearing.

*Affirmed and remanded.*

SCOTT, P. J., and STOUDER, J., concur.