THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JOE EDWARD BAKER, Defendant-Appellee.

(No. 11818;

Fourth District—February 7, 1973.

Basil G. Greanias, State's Attorney, of Decatur, (Scott B. Diamond, Assistant State's Attorney, of counsel,) for the People.

John F. McNichols, of Defender Project, of Springfield, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant-Appellee Joe Edward Baker was jointly charged, with Willie Devine Jr., in a two-count indictment for the crime of murder. Defendant Devine is not involved in this appeal. Defendant Baker who

was 15 years of age at the time of the proceedings, was represented by the Public Defender.

Defendant, prior to trial, moved to suppress confessions, statements and admissions made by him from September 9, 1971, to and including September 11, 1971, this being a period of time during which the defendant was in custody. Following an evidentiary hearing on the motion the trial judge, on December 22, 1971, entered a written order finding that the defendant "* * * did not intelligently or knowingly waive his constitutional rights to remain silent, to have an attorney present during interrogation, or to have the Court appoint an attorney to be present during interrogation if he was unable to afford one." The Court then suppressed all confessions, admissions and statements made by defendant. The People appeal from this order pursuant to Supreme Court Rule 604.

We summarize the evidence: At 10:00 P.M., on September 9, 1971, Police Officers Brown and Applegate went to Baker's home. They told his parents that he would be taken to the police station for questioning. Neither the defendant nor his parents were told why they wanted to question the defendant, simply that "They said they came to take Joe downtown to ask him some questions". The parents were told, however, that they could accompany Joe to the station. They declined because they did not think it was anything serious because "if it was they probably would have told us". The defendant was not warned of his rights at his home nor was he or his parents told of the nature of the offense being investigated. At the police station Joe was told he was charged with homicide, he was "booked" for that offense and placed in a cell. At about 11:00 P.M., defendant's father, Isaac Baker, was called from the police station by Patricia Johnson who was there on personal business. She told him that Joe was being held for homicide. Isaac went to the station where he was told that Joe had already been charged and there was "nothing you can do". Isaac stayed for about an hour and then left without seeing his son, though he did not repeat his request. Joe's parents did not see him, following his arrest, until the time of the hearing. At 1:57 A.M., on the following morning, September 10, 1971, the defendant was interviewed by two detectives, Hunk and Stolz, and Collins, a juvenile officer. Prior to commencing the interview defendant was orally advised of his "Miranda Rights" by Officer Stolz. This took "two minutes" according to Stolz who further testified that Joe appeared normal and mentally alert. He was then given a custodial interview form which listed the rights in four sentences and defendant placed his initials after each sentence. A fifth statement which is a part of the printed form and beneath which defendant affixed his signature, asserts that the signer

has read the rights set forth in the form, that he understands them and desires to make a statement to the interviewing officers.

Joe testified that he asked to see his parents ten or twelve times during the period in question. During the interview defendant told several different stories, and would then say they were not correct. He was asked to take a lie detector test and agreed to do so. Officer Pittman testified that he advised the defendant that he did not have to take the test and that "* * * he could call an attorney and get the attorney's consent before taking it." On the morning of September 10, 1971, Pittman went to the Baker home and told Mrs. Baker that her son had agreed to take the test and explained to her what the polygraph test was to the best of his knowledge. Pittman asked Mrs. Baker to sign a consent to the test which she did without ever talking to Joe. At 10:30 A.M., Officer Stolz again interviewed defendant who again said he wanted to take the lie detector test. That afternoon defendant was taken to Champaign by Officers Stolz and Peach where the test was conducted by Kenneth Frankenberry who warned defendant of his *Miranda* rights prior to giving the test. After the test, Frankenberry asked the defendant if he would repeat to the officers statements made during the test. Defendant agreed, the officers were called in and Stolz again warned him of his *Miranda* rights. Defendant then made an oral statement and was asked if he would allow it to be put into written form. Defendant consented and was again advised of his rights. He then gave a confession before Stolz, Peach, Frankenberry and Karen Kintzle who took the statement, transcribed and typed it. It was then signed by the defendant who was then returned to Decatur where, for the first time, he was visited by a lawyer from the office of the Public Defender.

Later, on September 10th, defendant was visited by the State's Attorney, an assistant State's Attorney, and two police officers, together with a stenographer. Defendant was advised as to his *Miranda* rights, said that he understood them. On learning that defendant had talked to a representative of the Public Defender, the assistant State's Attorney, despite defendant's statement that he would talk to the prosecutors, placed defendant in contact with the Public Defender's office by telephone. Following this telephone conversation, defendant stated that he had been advised not to make any statement and the interview was terminated.

During the hearing on the Motion to Suppress, Richard Parnaby, a psychologist for the Decatur Public School system testified that in February, 1967, he gave a battery of tests to the defendant. At the time of the test Baker was in the third grade at Durfee School though he was

11 years and 4 months of age. Parnaby administered the Wechsler Intelligence Scale for Children. Baker scored a verbal I.Q. of 70, a performance I.Q. of 79, a full scale I.Q. of 72. He also gave Baker the American School Achievement Test, Primary I, Form D. Baker derived a grade equivalent of 1.1 on the word recognition portion of the test which means the first month of the first grade. Parnaby's recommendation was that Baker be placed in a special class for the educable mentally handicapped. This recommendation was never implemented. Parnaby, at the time of the tests, calculated Baker's mental age to be 7 years, five months, or approximately 4 years less than his actual age. Parnaby could not say that Baker would score the same in 1970 as in 1967 on these tests since "* * * age is a factor". He testified that the tests are not foolproof. That Baker was not given a vocabulary test because he did not relate well, he was not verbal, that in 1967 he was reading at first month first grade level and was, for all practical purposes, illiterate.

David Kidd, boys' counsellor at Jefferson Middle School which Baker had attended for some months in 1969, testified that he knew Joe and had talked to him on various occasions. He related that Joe's grades for the last nine weeks of the preceding school term showed him failing in English, Social Studies, Science and Industrial Education, with a D in Remedial Math and a B in Physical Education; that these grades were given while defendant was in the eighth grade, that his sixth grade scores were better. He found Joe easy to communicate with. He was aware that Joe, while in the eighth grade, worked nights as a janitor. Robert Haskinson taught reading, the grammatical part of English, literature and speech at Jefferson Middle School. He testified that Joe was very slow in reading, had a second to third grade reading level. His writing ability was very poor; he was almost non-functional as a student. At times he could communicate with Joe, he sometimes had to change words so that he could comprehend. He did not put together complete thoughts.

Baker testified that when initialing the various sentences on the Custodial Interview Form he told Officer Stolz that he didn't understand the one concerning his right to counsel. That Stolz said it meant that "You can have an attorney if you want it". Baker then said, "I can't afford it", to which Stolz responded "The Court will get you one". Baker testified that he thought this meant that he was going to have to wait "until Court" to get an attorney. He did not ask to see an attorney when given the *Miranda* warnings in Champaign "* * * because I thought when they say an attorney the Court will, you know, afford—afford you an attorney, I thought you had to wait until Court, you know, before you can get an attorney". Joe further testified that when Stolz told him he

had a right to remain silent he thought this meant "to be quiet when you talk". That the phrase "anything you say can and will be used against you in a Court of law" means that "they will be testifying against me in Court".

In his ruling the trial judge expressly stated that he felt there was no intentional overreaching on the part of the police officers with respect to Joe, that there was no evidence of any coercion, undue influence or duress. That the officers repeatedly advised him of his rights, and the record supports these observations. He also found that there was no intentional failure to "go into greater detail with respect to the Mironda rights".

The trial judge ruled that Joe Baker did *not* knowingly and intelligently waive his constitutional rights at the time he was questioned. The sole issue presented by this appeal is whether that ruling is against the manifest weight of the evidence.

■■ On the issue raised by the Motion to Suppress, the People had the burden of proof. They need not establish the voluntary nature of a confession beyond a reasonable doubt. *People v. Golson,* 32 Ill.2d 398, 207 N.E.2d 68; it is sufficient to show by a mere preponderance of the evidence that it was voluntary. *People v. Dewey,* 42 Ill.2d 148, 246 N.E.2d 232; *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619.

■■ The rules of law which governed the trial judge's decision on the Motion to Suppress have been set forth in considerable decisional detail. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court held that, before questioning, a suspect must be warned of his constitutional rights and, having been so advised, that he may waive those basic constitutional guarantees provided he does so voluntarily, knowingly and intelligently. The Court noted that the mere fact that a written waiver is signed does not, in and of itself, establish a knowing and intelligent waiver. The question of whether or not a confession is free and voluntary depends on the circumstances under which it is taken and no single factor is determinative. (*People v. Henderson,* 37 Ill.2d 489, 229 N.E.2d 519.) The youthful age of a defendant is one of the factors to be taken into consideration on the issue of voluntariness (*People v. Cocroft,* 37 Ill.2d 225 N.E.2d 16), although youthfulness of a defendant does not automatically render a confession inadmissible if it is otherwise voluntary. (*People v. Watts,* 101 Ill.App.2d 36, 241 N.E.2d 463.) Other considerations weighing on the determination of the issue are the familiarity of the defendant with the English language and his mental capacity. (*Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.) That the defendant is young and of somewhat limited intelligence does not, *ipso facto,* render a confession involuntary.

(*People v. Hester,* 39 Ill.2d 489, 237 N.E.2d 466.) The police are not required to conduct a mental examination of the accused with a view to ascertaining his ability to comprehend the rights involved as a prerequisite to accepting a waiver but the warning must be in form which "* * * is meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act. * * * The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear understandable warning of all of his rights." *Coyote v. United States,* 380 F.2d 305 (10th Cir. 1967); *People v. Bosveld,* 109 Ill.App.2d 317, 320, 248 N.E.2d 697.

■■ The trial judge heard some 27 witnesses during the course of the extensive hearing on the Motion to Suppress. In his oral ruling on the motion he was demonstrably aware of the rule of law to be applied. He stated, "* * * The testimony that we have here is that the advice of rights that was given to Joe Edward Baker was given in virtually the same manner as the advice of rights that would be given to any other individual. And we have ample evidence in this case that Joe Baker is not like any other individual, that there are differences in Joe. * * * The testimony is of course that Joe is a subpar mentally individual; that he cannot and does not function as a boy of fifteen years of age—an ordinary normal fifteen years of age would function, * * * And yet the explanation of his rights was the same. * * * I must be able to find on the state of the record that not only was Joe Baker advised of his rights under the Miranda Case, but that he understood those rights and understanding them he waived those rights. I find it difficult, and in fact impossible, to do that in this case. * * * I am unable to find that there was a knowing, understanding waiver of the rights of the defendant, Joe Edward Baker, in this case * * *." The People requested, and were granted, leave to file additional authority and supplied reference to the case of *People v. Prim,* 53 Ill.2d 56, 289 N.E.2d 619, which deals with a factual situation clearly distinguishable from this case as is demonstrated by the following language which appears on page 68 of the opinion "For the defendant to deny that he understood them does not weaken our conclusion. The defendant was 19 years old. He had gone to his third year in high school. It is not contended that his failure to understand is due to any lack of intelligence. Under these circumstances the words used were sufficiently clear to convey the warnings prescribed by *Miranda*".

■■ To remark that the trial judge having observed the witnesses, their demeanor while testifying, their candor and sincerity, is in a far better position than we to weigh that evidence is to recite a litany. But

the rule seems pointedly appropriate in this case. The trial judge saw Joe Baker, he observed him, he heard him and arrived at a conclusion predicated upon that experience and the other evidence presented. The finding of the trial court, as to whether a confession is involuntary will be sustained unless contrary to the manifest weight of the evidence. (*People v. Higgins*, 50 Ill.2d 221, 226, 278 N.E.2d 68.) The finding of the trial judge here is not against the manifest weight of the evidence.

Judgment affirmed.

CRAVEN, P. J., and TRAPP, J., concur.