THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RANDY C. RUEGGER (Impleaded), Defendant-Appellee.

(No. 12914;

Fourth District—October 10, 1975.

Bobby F. Sanders, State's Attorney, of Charleston (James R. Mc-Cracken, Assistant State's Attorney, and G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Richard J. Wilson and Robert E. Davison, both of State Appellate Defender's Officer, of Springfield, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant Randy Ruegger was indicted by grand jury for the offenses of burglary, forgery, and criminal damage to property. The Circuit Court

of Coles County entered an order suppressing defendant's confession, and the State has appealed pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1973, ch. 110A, par. 604(a)(1)).

Defendant was arrested shortly after midnight on March 13, 1974, in the Goodyear Tire Store in Mattoon. The *Miranda* warnings were read to him at the scene. A few minutes later defendant was taken to the police station where he was given a written form explaining his rights. That form, which was signed by defendant, states that defendant understood his right to counsel and right against self-incrimination and did not wish to answer any questions at that time. Defendant was then placed in lockup.

At approximately 10 a.m. the same day, defendant was taken to the office of Captain Robert O'Dell of the Charleston Police Department, who is defendant's uncle. Detective Edward Kallis of the Charleston Police Department was present in the office with Captain O'Dell and advised defendant that he was investigating a burglary of the Post Seed House in Charleston. Defendant was again given a form explaining his rights, and he stated that he did not want to answer any questions until he had talked to his attorney. There then occurred a 20-minute conversation involving defendant and Detective Kallis and Captain O'Dell. At the end of the conversation defendant said he wanted to give a statement concerning everything he had been involved in. Whereupon defendant made a tape-recorded statement in which, in response to questions by Detective Kallis, he confessed to several burglaries and related offenses, including the burglary of the Post Seed House.

Detective Kallis, Captain O'Dell, and defendant all testified at the hearing on defendant's motion to suppress the confession. Although their testimony is in agreement that no definite promises were made to defendant in exchange for his confession, there is disagreement whether inducements were offered to defendant to encourage him to confess. Defendant testified that during the conversation he talked mostly with Kallis and that after defendant had refused to answer any questions Kallis said that he knew that defendant had committed the Post Seed House burglary and showed defendant some checks allegedly taken in the burglary and forged by defendant. Defendant also testified that Kallis told him that he (Kallis) had gotten probation for one of defendant's friends who had pled guilty and that other people who had made statements had received probation. Defendant recalled that Kallis had said that "if I would keep my nose clean that he couldn't really promise anything but he would go to bat for me." According to defendant, the officers showed him the statute book designating the penalties

for various offenses and told him that if he confessed to everything he would be charged with only some of the offenses. They also told him they would help him get released on a recognizance bond. When asked by the court why he had given the statement defendant answered that "They offered to help me out, and that's what I wanted. I had a lot better chance not admitting to anything and keeping my mouth shut, but they said they would help me out * * * on aggravation and mitigation."

Detective Kallis testified that after defendant had refused to answer any questions, he told defendant that he (Kallis) could not talk to defendant any further. Defendant then asked Kallis what would happen if he made a statement. Kallis testified that he explained the court procedures and possible penalties to defendant, and Captain O'Dell gave defendant the statute book to refer to. Kallis, however, denied offering to help defendant or telling defendant that he had helped others in the past. After defendant indicated that he wished to make a statement Kallis again advised him of his rights. Kallis recalled that " I said, 'you know if you were to call Mr. Tulin [defendant's attorney] now that he would tell you to shut your mouth and not say anything', and [defendant] said, 'that's right', and he still wanted to go ahead and make this statement."

Captain O'Dell testified that the conversation was initiated by defendant after defendant had stated that he did not want to answer any questions. O'Dell recalled that most of the conversation was between Kallis and defendant and that defendant had asked about court appearances and what would happen to him if he were charged with other crimes. O'Dell also testified that he told defendant that he "couldn't do him any good." Although he testified that he could not remember all of the conversation, O'Dell did not believe that he had told defendant that he would help him get a recognizance bond. He could not recall whether or not Kallis had said anything about it. He also could not recall whether Kallis had said anything about "going to bat" for defendant.

The trial court granted defendant's motion to suppress on the basis that the State had not met its burden of showing that defendant's confession was not a product of compulsion exerted on him during the 20-minute conversation in the form of offers of assistance by the police officers.

■■ The State bases its contention that it was improper for the trial court to suppress defendant's confession on the argument that the record shows the confession was freely and voluntarily given after defendant's rights were fully explained and understood and on the alternative argu-

ment that the confession falls within the "volunteered statement" exception of the *Miranda* decision.

The basic guidelines for determining whether a statement has been given voluntarily were set forth in *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602. In *Miranda* the Court stated that a statement given freely and voluntarily without any compelling influence is admissible. However, the Court also made it clear that it was setting a high standard for determining voluntariness in the context of custodial interrogation without the presence of counsel and that "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." (*Miranda,* 384 U.S. 436, 475, 16 L.Ed.2d 694, 724, 86 S.Ct. 1602, 1628.) If a defendant challenges the voluntariness of his statement, the State must first show that the defendant was adequately warned of his right to counsel and his privilege against self-incrimination before being interrogated. Where this requirement has not been met, the statement is per se inadmissible. Where the warnings are found to be adequate or, as in the instant case, their adequacy is not disputed, the court "must make an *ad hoc* determination of the specific facts bearing on voluntariness since no *per se* rule has yet been adopted to govern this problem." (*People v. Hill,* 39 Ill.2d 125, 131, 233 N.E.2d 367, 371.) In determining whether the State has sustained its burden of demonstrating that the evidence as a whole shows that a statement was made voluntarily, the trial court need not be convinced beyond a reasonable doubt and its finding will not be disturbed on review unless contrary to the manifest weight of the evidence. *Lego v. Twomey,* 404 U.S. 477, 30 L.Ed.2d 618, 92 S.Ct. 619; *People v. Prim,* 53 Ill.2d 62, 289 N.E.2d 601.

■■  The Illinois courts have long recognized that offers of leniency are a factor to be considered in determining whether a statement is voluntary. In *People v. Heide,* 302 Ill. 624, 627, 135 N.E. 77, 79 (1922), the supreme court stated that it was the rule in Illinois that "a confession becomes incompetent whenever any degree of influence has been exerted by any person having authority over the charge against the prisoner or over his person, tending to cause duress or hope of leniency * * *." In the decision the court held that it was prejudicial error to admit the defendants' confessions where there was uncontradicted testimony that police officers had told the defendants that it would be better for them to tell the truth, that if they told the truth they would be taken to the state's attorney and allowed to make a statement, and that the state's attorney might show them leniency. The court concluded that although

the police officers testified that they made no direct promises of leniency, their statements were such as to raise hopes of leniency in the defendants' minds.

■■ Cases decided since *Heide* indicate that although in some jurisdictions the mere suggestion of the advisability of telling the truth is sufficient to render a statement involuntary, such is not the rule in Illinois. (*People v. Hartgraves,* 31 Ill.2d 375, 202 N.E.2d 33; *People v. Pugh,* 409 Ill. 584, 100 N.E.2d 909; *People v. Klyczek,* 307 Ill. 150, 138 N.E. 275.)

> "Mere exhortation to tell the truth will not make a confession afterward made inadmissible, but the statement that it is better to tell the truth may be made under such circumstances as to make a confession afterwards made incompetent. If there is coupled with the advice a suggestion of a benefit in the particular case, a confession by reason of such advice and suggestion is incompetent." (307 Ill. 150, 154, 138 N.E. 275, 277.)

In *Hartgraves,* the most recent of these decisions, the court stated that "a mere suggestion of the advisability of making a statement does not in itself render a confession involuntary." (31 Ill.2d 375, 381, 202 N.E.2d 33, 36.) There the court upheld the trial court's finding that a confession was voluntary where a police officer had commented to the defendant that "it would go easier on him in court if he made a statement" but there was no testimony by the defendant nor any other evidence that defendant's confession had been induced by hopes of leniency.

All of the above cases were decided prior to *Miranda,* however, and do not recognize that the issue of voluntariness involves waiver of the right to counsel as well as the privilege against self-incrimination. The only post-*Miranda* decision discussing offers of leniency as a factor affecting the voluntariness of a statement is *People v. Jones,* 8 Ill.App.3d 849, 291 N.E.2d 305, where the court upheld the trial court's suppression of a statement where there was evidence that the defendant was offered probation if he made a statement.

Since voluntariness is to be determined from the totality of the circumstances other factors such as the age, intelligence, and experience of the defendant, the length and intensity of the interrogation, and prior refusals to answer questions may also be considered. (*People v. Hill,* 39 Ill.2d 125, 233 N.E.2d 367; *People v. Baker,* 9 Ill.App.3d 654, 292 N.E.2d 760; *People v. Clemens,* 9 Ill.App.3d 312, 292 N.E.2d 232.) In the instant case, at the time the confession was made defendant was 18 years old, was in the last year of high school, and was familiar with the criminal process. There was no lengthy interrogation nor any indication

of physical coercion. Defendant had, however, twice clearly indicated that he did not wish to answer any questions.

■■ Since none of the above factors appear decisive, the issue before us is whether the evidence, considered in the light most favorable to the defendant, indicates that the police officers did not merely suggest that it would be advisable for defendant to tell the truth but persuaded him that if he made a statement he would be treated more leniently. Although it is undisputed that the police officers made no definite promises to defendant, defendant's version of the conversation was that the police officers conveyed to him the impression that they would "go to bat" for him on such matters as a recognizance bond and probation if he confessed to everything. In addition, the unusual factor that defendant was interrogated by a relative may have added an element of subtle compulsion to confess. At any rate the trial judge, who had the opportunity to observe the witnesses, is in a far better position than we to weigh the evidence. We therefore conclude that the trial court's finding that the State had not sustained its burden of showing that defendant's confession was voluntary and not the result of compulsion is not against the manifest weight of the evidence. In so ruling we note that the trial court filed a memorandum containing findings of fact and conclusions of law. We found the memorandum most helpful and wish to commend this practice.

The State also offers the alternative argument that defendant's confession falls within the "volunteered statement" exception of *Miranda*:

"There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (384 U.S. 436, 478, 16 L.Ed.2d 694, 726, 86 S.Ct. 1602, 1630.)

We find this argument without merit. As the *Miranda* decision makes clear, this exception is limited to statements which were not made in response to custodial interrogation. (*In Re Orr*, 38 Ill.2d 417, 231 N.E.2d 424, *cert. denied*, 391 U.S. 924, 20 L.Ed.2d 663, 88 S.Ct. 1821; *People v. Baer*, 19 Ill.App.3d 346, 311 N.E.2d 418.) Indeed the whole thrust of the *Miranda* decision is that:

"* * * when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be em-

ployed to protect the privilege * * *." (384 U.S. 436, 478, 16 L.Ed.2d 694, 726, 86 S.Ct. 1602, 1630.)

■■ The only case cited by the State in support of this argument is *People v. Hill,* 39 Ill.2d 125, 233 N.E.2d 367. In *Hill,* where there was evidence that the defendant called back a police officer after interrogation had ceased and, before the officer could say anything, admitted involvement in a crime, the court stated that although the argument that the defendant's statement fell within the "volunteered statement" exception had some merit, it preferred to decide the case on other grounds. However, even if the "volunteered statement" exception is applicable to the facts of *Hill,* it would not be applicable to the case before us. Here defendant's statement was made in the form of tape-recorded answers to questions put to him by a police officer while defendant was in police custody. All of the characteristics of formal interrogation were present. In order to apply the "volunteered statement" exception to the facts of the instant case it would be necessary to ignore the holding of the *Miranda* decision.

For the reasons stated above, the order of the trial court suppressing defendant's statement is affirmed.

Judgment affirmed.

CRAVEN, J., concurs; TRAPP, P. J., concurs in the result.