*In re* J.S., a Minor (The People of the State of Illinois, Petitioner-Appellee, *v.* J.S., Respondent-Appellant).

First District (5th Division)   No. 82—3100

Opinion filed February 10, 1984.

James J. Doherty, Public Defender, of Chicago (Kathleen M. McGinnis and James H. Reddy, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Harry John Devereux, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Respondent, adjudicated a delinquent minor following a hearing, was committed to the Department of Corrections, Juvenile Division. Ill. Rev. Stat. 1981, ch. 37, par. 705—2(1)(a)(5).

He appeals that finding and argues that (1) the trial court erred in denying his motion to quash his warrantless arrest and to suppress his oral and written statements because no probable cause to arrest

him had been established by a tip from an anonymous informant whose reliability had not been sufficiently established, and (2) the trial court's denial of his motion to suppress his statement was contrary to the manifest weight of the evidence which showed that he was of Hispanic origin, only 14 years old, lacking comprehension of the English language and not capable of making a voluntary, intelligent and knowing waiver of his *Miranda* rights.

It is undisputed that respondent was taken into custody on January 21, 1982, by police officers who acted upon information supplied by an informant that respondent was involved with three other youths in the January 11, 1982, stabbing death of a man they sought to rob and that following his arrest he was taken to police headquarters where the police read him his *Miranda* rights in English; that he acknowledged that he understood them, and that later, the police and the respondent were joined by an assistant State's Attorney and a youth officer who again read him his constitutional rights in English, and that upon further questioning he responded in English stating that he understood all that was read to him and by him and willingly waived those rights by signing a waiver form.

Approximately 13 hours after his arrest, respondent signed a written statement in which he admitted his presence at the murder, but denied that it was he who had actually stabbed the victim.

He was then placed in the custody of the Cook County Juvenile Temporary Detention Center on January 22, 1982. The State's motion to permit his prosecution under the criminal laws was denied and he was tried as a juvenile.

At the hearing on respondent's motion to quash his arrest for lack of probable cause, Officer Mike Stepkowicz, who conducted the on-the-scene investigation of the murder, testified that the victim, prior to his death, had told his live-in girlfriend that "kids, four or five" had stabbed him.

Gang Crimes Officer Jack Konior testified that acting upon information from a "reliable" informant, he arrested respondent on suspicion of murder; that his informant who was previously known to him and was one who had supplied him with reliable information on past occasions and whom he had never known to tell him anything that was untrue, informed him that he had heard respondent "boasting" that while accompanied by three other subjects, he had stabbed a white man in Wicker Park. Konior further testified that he received this information personally from his informant and did not pay him anything for the information. Respondent waived cross-examination of Konior.

It was stipulated that (1) the respondent was arrested without an arrest or search warrant in a snack shop at 6:20 p.m. on January 21, 1982, while doing nothing unlawful or unusual, and (2) subsequent to the arrest, oral and written statements were elicited from respondent relative to the case.

The trial court denied the motion to quash the arrest, and ruled that, absent cross-examination by respondent on this issue, there was insufficient evidence to destroy probable cause; and that Officer Konior had properly used previous occasions where the informant had given accurate information to the police, as a basis for his conclusion that the informant's information in the instant case was reliable.

Respondent thereafter moved to suppress his statements made prior to, at the time of, or subsequent to his arrest, contending that he did not knowingly, intelligently, or voluntarily waive his *Miranda* rights because his limited comprehension of the English language prevented his understanding of what was said to him. Additionally he contended that these statements were made (1) outside the presence of his parents or his attorneys, (2) were physically coerced by the police, and (3) resulted from fatigue, hunger and thirst.

At the hearing on the motion to suppress, arresting officer Detective Michael Herigodt testified that respondent was taken to Area 5 Headquarters where he was placed alone in an interview room and handcuffed to the wall. He further testified that he advised him of his constitutional rights and read the *Miranda* warnings to him in English; that respondent replied in English, that he understood them and indicated a willingness to speak to him about the incident. Herigodt further testified that subsequent to his interview with respondent, the youth remained alone in this room until an assistant State's Attorney and youth officer arrived.

Assistant State's Attorney Jeff Warnick, Youth Officer Charles Dziak and Detective Herigodt, all testified that Warnick advised the respondent of his constitutional rights, in English, at approximately 2:30 a.m. on the 22nd of January, 1982; and that when asked, respondent again answered, in English, that he understood. Warnick and Dziak further testified that after respondent read his rights aloud and in English from a waiver of rights form, he gave them an oral statement. Dziak also testified that when he arrived for the 2:30 a.m. interview, he provided the respondent with food.

Warnick also testified that he believed Youth Officer Dziak attempted to contact respondent's parents at 1 or 2 a.m. that morning. However, Dziak admitted that he did not ask respondent if he wished a family member present with him at the interview and he did not

contact respondent's parents prior to the interview.

Warnick and Dziak testified that they were present, together with Herigodt and a court reporter, at 5:10 a.m. on January 22, 1982, when Warnick again advised the respondent of his rights and that after respondent replied, in English, that he understood, respondent gave to the court reporter a written statement. They further testified they were both satisfied that the respondent knew and understood what he was doing; that neither respondent's written or oral statements were made as a result of any physical or mental coercion by those present, and that the respondent had not been handcuffed while making either of these statements. Warnick, Dziak and Herigodt all testified that respondent appeared to read the transcribed statement, then initialed each page before he finally put his signature to the entire statement. Warnick and Dziak also initialed the statement. The court reporter took a photograph of the respondent at the time he gave his statement, which was available to the trial court for use in its determination of respondent's physical condition when he signed his written statement.

On respondent's behalf, Dr. Alen Ravitz, a psychiatrist, testified that prior to the appearance of a translator on February 9, 1982, he had a clinical interview in English with the respondent, and concluded that respondent did not clearly understand his English.

Philip Mooney, a Chicago Board of Education employee, testified that on January 25, 1982, he administered a Gates-MacGinite Reading Test in English to respondent. Respondent's scores on various sections of this test ranged from 2.4 (second grade, fourth month) to 4.2 (fourth grade, second month). Mooney admitted, however, that during the test, respondent followed directions given him in English.

Jose Valdez, a bilingual teacher at the Juvenile Detention Center School, testified that he worked with respondent in a one-to-one relationship for seven months. It was his opinion that respondent had a reading level of first-second grade, and would not be able to read and comprehend *Miranda* warnings given in English.

Loretta Ritter, guidance counselor at the Wicker Park School, testified that respondent was a student there prior to his arrest and was in a category B level of bilingual education. Although she had never had any personal contact with respondent, it was her opinion that *Miranda* warnings, given in English, could not be comprehended by someone of this level of fluency.

Respondent testified on his own behalf that he did not understand any of the English waiver questions Warnick showed him. When shown a test previously given him in English in which he matched

numbers with their equivalent English words and scored 90% correct, respondent testified that he had studied before taking the test.

Finally, pertinent to his contention that he gave his statement as a result of physical coercion, fatigue, hunger and thirst, the respondent testified that subsequent to his arrest, the police, in an attempt to force him to sign his written statement, slapped him and pulled his hair. In addition, respondent further testified that he received no food, water or sleep from his arrest at 6:20 p.m. on January 21, 1982, to the time that he signed his written statement at 7:10 a.m. on January 22, 1982.

The trial court denied the motion to suppress, holding that the passage of time between respondent's arrest and his statement was not coercive, and then observed that respondent had "certain comprehension of key language" while in the courtroom. The trial court, after taking notice of a "certain amount of sophistication in the streets today," referred to respondent's number translation test as being persuasive towards the question of his English comprehension.

At trial, the victim's girlfriend related the events leading to the victim's death. Assistant State's Attorney Warnick testified regarding the time and place of the statements, and it was stipulated between the parties that Warnick would give the same testimony that he gave at the hearing on the motion to suppress the statement regarding the circumstances of the arrest. The court thereafter admitted the respondent's statement into evidence. On October 14, 1982, respondent was found delinquent, adjudicated a ward of the court and committed to the Illinois Department of Corrections, Juvenile Division. He appeals from that finding.

Opinion

We first consider respondent's contention that the trial court erred when it denied his motion to quash his arrest and to suppress his statement because the arrest was made without probable cause and followed information supplied to the police by an unidentified informant who was neither a victim nor an eyewitness to the offense.

In deciding the question of probable cause the courts deal with probabilities, which are the factual and practical considerations of everyday life on which reasonable men, not legal technicians act. (*Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329.) The lawfulness of an arrest without a warrant depends upon whether the officer has reasonable grounds for believing that the person to be arrested has committed the criminal offense. *People v. Durr* (1963), 28 Ill. 2d 308, 192 N.E.2d 379.

The law is clear in Illinois that an arresting officer may rely upon information supplied by an informer in determining whether probable cause exists "if the reliability of the informant has been previously established or independently corroborated." *People v. McCray* (1965), 33 Ill. 2d 66, 70, 210 N.E.2d 161, 163, *aff'd* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056.

Whether information received by an informant amounts to probable cause is to be determined on the totality of the circumstances. (*Illinois v. Gates* (1983), 462 U.S. 213, 231, 76 L. Ed. 2d 527, 544, 103 S. Ct. 2317, 2328.) In *Gates,* the United States Supreme Court abandoned the rigid two-pronged test for establishing probable cause based on an informant's tip that it had articulated in *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509. The *Aguilar* test required satisfaction of a two-pronged analysis: first, the informant had to satisfy the "basis of knowledge" prong, which was concerned with the facts and circumstances showing that the informant knew that the person named had been or would be involved in criminal activity; the second is the "veracity prong," which is concerned with the facts and circumstances from which it was concluded that the informant was credible or his information reliable. (378 U.S. 108, 114-15, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514; *People v. Winters* (1983), 97 Ill. 2d 151, 160, 454 N.E.2d 299.) An exception to this analysis, as set forth in *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, allowed corroboration of facts in a tip to compensate for an inability to satisfy the "basis of knowledge" prong.

In choosing the totality of circumstances approach, the United States Supreme Court, in *Gates,* held that the elements of the *Aguilar-Spinelli* test-veracity, reliability and basis of knowledge— "should be [now] understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question [as to] whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." (462 U.S. 213, 230, 76 L. Ed. 2d 527, 543, 103 S. Ct. 2317, 2328.) The *Gates* court further held that "a deficiency in one [prong] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." 462 U.S. 213, 76 L. Ed. 2d 527, 545, 103 S. Ct. 2317, 2329.

Using the elements of the *Aguilar-Spinelli* test as factors rather than the rule in the determination of the totality of the circumstances, we initially note that prior to Officer Konior's receipt of the informant's information, he was aware that the victim's girlfriend had told

the investigating officer at the scene that the victim had told her that "kids—four or five" had stabbed him. Konior's testimony that the informant told him that he had personally overheard the respondent (on a street that Officer Konior knew respondent frequented) boasting that he and three others stabbed a white man during a robbery, in addition to the informant's referral to the respondent by his first name, "J." and by his nickname, "Bo" (known by Konior to be accurate), was evidence of the informant's "basis of knowledge" that a crime had been committed.

The "veracity" prong was established by Konior's testimony that he met personally with the informant, whom he had known to be reliable and truthful, and who had given him information on prior occasions that he acted upon.

■ We conclude that a review of the evidence in the case at bar, given the "totality of circumstances" fully supports the trial court's finding of probable cause for respondent's arrest. The arresting officer testified under oath, in open court, fully and in precise detail as to what the informer told him and why he had reason to believe his information was trustworthy and although he was subject to cross-examination, respondent waived the opportunity. The trial judge was obviously satisfied that Officer Konior was telling the truth. As a reviewing court, we may not disturb the conclusion reached by the trial court unless we find it to be manifestly erroneous. *People v. Holloway* (1981), 86 Ill. 2d 78, 426 N.E.2d 871.

Our determination that the trial court's denial of respondent's motion to quash his arrest was proper obviates the need to discuss his correlative contention that the trial court erred in not suppressing his confession on the ground that it was a direct result of the illegal arrest.

■ We next consider whether the trial court's denial of respondent's motion to suppress his confession was contrary to the manifest weight of the evidence. Initially he contends that his lack of comprehension of the English language precluded a knowing and intelligent waiver of his *Miranda* rights read to him in English.

One suspected of a crime is guaranteed under *Miranda* his right to assistance of counsel and a right to remain silent during in-custody police interrogation. Any statement obtained in derogation of those rights is inadmissible in a subsequent criminal prosecution. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) A suspect may waive his constitutional rights provided he does so voluntarily, knowingly and intelligently. 384 U.S. 436, 444, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602, 1612.

In the present case, it is undisputed that while in custody, the respondent was advised several times of his rights as mandated by *Miranda*. The question presented here is whether he knowingly and intelligently waives those rights where he argues that he is of Hispanic origin, 14 years of age, and lacked the comprehension of the meaning of the warnings given to him in English.

The determination of whether there has been an intelligent waiver of rights was enunciated by the supreme court in *People v. Turner* (1973), 56 Ill. 2d 201, 205-06, 306 N.E.2d 27, wherein the court, quoting from *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023, stated: "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." We will not disturb the ruling of the trial court unless it is against the manifest weight of the evidence. *People v. Wipfler* (1977), 68 Ill. 2d 158, 171, 368 N.E.2d 870.

In the instant case, the State was required to establish by a preponderance of evidence that respondent was able to understand the *Miranda* warnings. (*People v. Baker* (1973), 9 Ill. App. 3d 654, 292 N.E.2d 760.) The State's evidence shows that the respondent, while never requesting an interpreter, conversed entirely in English with the arresting officer, youth officer and assistant State's Attorney and repeatedly acknowledged that he understood the *Miranda* warnings which were given to him. Furthermore, witnesses present when respondent's statement was taken, testified that respondent, after first reading his transcribed statement, initialed each page of the statement and signed his name to its final page.

Respondent submits that his evidence presented at the suppression hearing, which included the testimony of a psychiatrist, two educators and a guidance counselor was more credible than the State's evidence. However, the record shows that none of those witnesses had any contact with respondent prior to his commitment to the Juvenile Detention Center, nor did the guidance counselor ever have any personal contact with respondent.

The trial judge having observed the witnesses, their demeanor, candor and sincerity while testifying in court, is in a far better position than the reviewing court to weigh that evidence in the determination of respondent's ability to comprehend the English language. The trial judge observed the respondent's testimony and demeanor and concluded that based upon all of the evidence presented, respondent's statements were not credible. We believe that he was within his

province in so ruling and that the evidence was sufficient to justify the trial court's finding of a valid, intelligent and knowing waiver of *Miranda* by respondent.

■ Respondent next argues that the youth officer's delay in seeing the respondent and his failure to notify respondent's parents precluded a voluntary waiver of his *Miranda* rights.

The voluntariness of a juvenile's confession is to be determined by the totality of the circumstances. *People v. Simmons* (1975), 60 Ill. 2d 173, 326 N.E.2d 383; *In re Lamb* (1975), 61 Ill. 2d 383, 336 N.E.2d 753, *cert. denied* (1976), 425 U.S. 938, 48 L. Ed. 2d 180, 96 S. Ct. 1672.

Respondent urges us to find that his statement was involuntary because police failed to comply with section 3—2 of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 703—2(1)), which requires that notice be given to a parent or guardian when a juvenile is taken into custody. The statute requires the law enforcement officer who takes a minor into custody, without a warrant, to immediately make a reasonable attempt to notify the parent or other person legally responsible for the minor's care that the minor is in custody and also notify the nearest juvenile officer.

If counsel for a juvenile is not present when a confession or admission is obtained, utmost care must be taken to insure that the confession is voluntary and not coerced, suggested or the result of the juvenile's ignorance of his rights or his adolescent fantasy, fright or despair. *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428; *People v. Simmons* (1975), 60 Ill. 2d 173, 326 N.E.2d 383.

Respondent contends that, subsequent to his arrest at 6:30 p.m. on January 21, 1982, he had no contact with Youth Officer Dziak until approximately 2:30 a.m. on January 22, 1982, when he was interviewed by Dziak and Warnick. The record is unclear as to whether the arresting officer attempted to contact the youth division prior to 12:05 a.m. If there was no attempt made, the officer who initially questioned the respondent did not comply with section 3—2; however, where a juvenile has been admonished in detail with respect to his right to remain silent and to have assistance of counsel and he has understood such a warning, a police officer's failure to comply with section 3—2 does not preclude admission of defendant's statement. *People v. Steptore* (1972), 51 Ill. 2d 208, 281 N.E.2d 642.

■ We have reviewed the evidence in this case and conclude that the failure to notify respondent's parents did not preclude admission of his statements. He was repeatedly given his *Miranda* warnings, and he repeatedly acknowledged he understood them and indicated he

would give a statement. Photographs taken of respondent belie his claim of physical abuse and coercion.

Illinois courts have recognized that it is preferable that the parents of a juvenile be present when a juvenile waives his rights (*In re Bertrand* (1978), 65 Ill. App. 3d 703, 382 N.E.2d 660) but have held that the absence of the accused juvenile's parents or guardian does not render ineffective an otherwise valid waiver of constitutional rights (*In re Stiff* (1975), 32 Ill. App. 3d 971, 336 N.E.2d 619), rather the fact that there has been a violation of section 3—2 of the Juvenile Court Act, and a failure to notify the juvenile's parents, resulting in their absence during questioning of the juvenile, has been stated to be at most "a factor in determining whether subsequent statements were voluntarily made." *People v. Creach* (1979), 69 Ill. App. 3d 874, 890, 387 N.E.2d 762, *aff'd in part, rev'd in part on other grounds* (1980), 79 Ill. 2d 96, 402 N.E.2d 228.

In sum, an examination of the totality of the circumstances in this case convinces us that the minor's confession was voluntary. Any delay which occurred in contacting the youth officer was mitigated by the fact that respondent's signed written statement, put into evidence at trial, was given only after the youth officer arrived at the station, and respondent was again informed of his rights by Assistant State's Attorney Warnick. In addition, even if we hold that the police violated section 3—2 by not contacting respondent's parents, which we do not, the law is clear that such a violation in itself would not render the statement inadmissible (*People v. Zepeda* (1970), 47 Ill. 2d 23, 27, 265 N.E.2d 647), as the act does not make juveniles immune from proper police investigation. 47 Ill. 2d 23, 28.

Finally, the respondent contends that the following preface to the trial court's denial of his motion to suppress ignores the factors to be used in making a ruling based on the *Simmons* "totality of circumstances" standard:

> THE COURT: I think there are two mutually exclusive elements in the defendant's argument. He could not understand the English language, then the statement could not have been voluntarily within the meaning of *Miranda* even if the police coerced him with handcuffs. If he understood *Miranda*, he may have been coerced by police conduct. So it is one or the other, but not both.

We disagree with respondent's final contention as we find no evidence in the record of the trial court to indicate that the trial judge ignored the "totality of circumstances" standard in *Simmons*, in its determination of the voluntariness of respondent's statement.

We conclude that the trial court's denial of respondent's motion to suppress was not contrary to the manifest weight of the evidence.

For the foregoing reasons, the finding of delinquency and commitment to the Department of Corrections, Juvenile Division is affirmed.

Affirmed.

MEJDA, P.J., and SULLIVAN, J., concur.