THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH R. SHUFF, Defendant-Appellant.

Fifth District    No. 5—86—0051

Opinion filed July 20, 1987.

58

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, and Nancy L. Abell, law student, for appellant.

Richard A. Runde, State's Attorney, of Effingham (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, and Joseph J. Ciaccio, Sr., of counsel), for the People.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendant, Kenneth R. Shuff, appeals from the judgment of the

circuit court of Effingham County on his conviction by a jury of armed robbery. Defendant was sentenced to eight years in the Department of Corrections. We affirm.

In the early morning hours of March 12, 1985, the Hardee's restaurant in Effingham was robbed at gunpoint. A police dispatch given to surrounding areas briefly described a vehicle suspected of having been involved in the armed robbery. Officer Edward Johnson of the Mattoon police department noted that the vehicle described in the dispatch was similar to one driven by defendant, the son of the woman with whom Johnson was then living. After Johnson got off duty, defendant's mother drove Johnson to the house of one of defendant's friends in order to talk to defendant. Johnson asked defendant to come to the police station to straighten things out. Defendant's mother left and Johnson accompanied defendant in defendant's vehicle to the Mattoon police station. On the way, defendant, who was driving, offered Johnson a drink of wine from the container out of which he was drinking. Johnson declined the offer.

Defendant and Johnson arrived at the police station at about 5 p.m., at which time the Effingham police were called to question defendant. Detective Bence from the Effingham police department arrived at approximately 6:15 or 6:30 p.m. Bence informed defendant of his *Miranda* rights and proceeded to question defendant about the armed robbery. The interview lasted approximately three hours, with Johnson being present during a substantial portion of the questioning. When defendant stated he was tired and no longer wished to talk with the officers, Bence terminated the interview. Defendant made no admissions of involvement in the armed robbery at this time.

Defendant left the station with Johnson in defendant's vehicle. On the way to Johnson's house, defendant and Johnson discussed stopping somewhere and getting something to eat. According to Johnson, a short time later, defendant appeared upset and started crying. Johnson asked defendant what was wrong. Defendant informed Johnson that he had robbed the Hardee's. Johnson then told defendant the best thing he could do was to tell the truth and asked him if he would be willing to talk with someone about it and get some help. Defendant answered he would be willing to do that. Defendant, however, relates a different version of the conversation leading up to his confession. He claims Johnson told him on the drive home that if he (defendant) had anything to do with the robbery it would be best to tell him about it so that he (Johnson) could try to help him out the best he could. At this point, defendant began to cry and confessed to the robbery. Under either version, Johnson did not reinform defendant of his

*Miranda* rights.

After defendant and Johnson went inside Johnson's house, Johnson called the station to make arrangements for defendant to meet with Bence the next day. Defendant spent the night with his mother and Johnson. During the course of the evening, in discussing the situation with defendant's mother, Johnson stated that, "[I]f he was my own child, I would probably take him outside and kick his butt across the back yard before we went uptown." Defendant later informed his mother and Johnson that he was going to go out with some friends. Both his mother and Johnson told him that it was not in his best interest to leave. Again, defendant's version differs. According to defendant, Johnson told him he was staying there that night and was not going anywhere and was going down to the police station in the morning.

The next morning, defendant kept his appointment with the detectives. Defendant drove himself to the station. Johnson, already on duty, arranged to be at the station at approximately the same time as defendant. Defendant, however, testified Johnson followed him to the station. At the station, defendant was again advised of his rights. Defendant signed a waiver and gave a written statement confessing to the armed robbery. Johnson was not present during this interview.

Defendant argues on appeal that his confessions to Johnson and the other officers should have been suppressed. Defendant believes his statements were involuntary and in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. We disagree.

Defendant contends his confession to Johnson was involuntary because Johnson was living with defendant's mother and had intimidated and threatened defendant in the past. He argues he was not allowed out of Johnson's presence or control the entire time so that his will clearly was overborne by Johnson. Defendant supports his position by pointing out the following facts: he was brought to the Mattoon police station by Johnson; Johnson remained in the interrogation room the majority of the time during the first interview; he was allowed to leave at the end of the interview because Johnson was with him and Johnson, as a police officer, could be expected to wear defendant down; he was "forced" to spend the night at Johnson's house; and he was followed to the station by Johnson dressed in full uniform the next morning. Defendant argues Johnson took advantage of his tired state and his relationship to defendant to obtain his confession. Defendant further believes his second confession was also involuntary because there was "no break in the stream of events" between his first confession to Johnson and his written statement the

next morning. Defendant contends any subsequent confession therefore was tainted.

We, like the trial court, view the "facts" differently. Defendant was not a young boy at the time of the robbery. He was a 25-year-old adult who no longer lived with his mother. Defendant had known Johnson for approximately one year and could remember only one incident in the past where Johnson uttered a statement that possibly could be construed as a threat. The threat consisted of Johnson allegedly telling defendant he would personally kick defendant's rear end if he kept getting into trouble. Defendant wants us to believe he was intimidated by this officer who lived with his mother, yet on the way to the station, defendant was brazen enough not only to drink wine while driving with this same police officer in the vehicle but also to offer Johnson some of it to drink. Although present for a majority of the first interview, Johnson never questioned defendant. Defendant made no admissions, and when he informed Bence he did not wish to answer any more questions, the interview was terminated. No threats or promises or physical means were used to make defendant give a statement. *Cf. People v. Ruegger* (1975), 32 Ill. App. 3d 765, 336 N.E.2d 50.

Defendant knew he would be giving Johnson a ride home upon leaving the station because Johnson had no other immediate way home. Once in defendant's vehicle, Johnson and defendant discussed getting something to eat. Only after defendant started crying did Johnson ask defendant what was wrong and offer to get him some help. Even if, as defendant claims, Johnson urged defendant, before he started crying, to tell him about the robbery if he had anything to do with it in order to get him help, Johnson did not continue the interview just concluded at the station. Johnson's statements simply cannot be construed as interrogation. They were not of such a nature that Johnson should have known they were "reasonably likely to elicit an incriminating response" from defendant at that time. (See *Rhode Island v. Innis* (1980), 446 U.S. 291, 300-02, 64 L. Ed. 2d 297, 307-08, 100 S. Ct. 1682, 1689-90.) Admonitions to tell the truth, coupled with the existence of a close relationship, do not automatically render a subsequent confession involuntary. (See *People v. Wipfler* (1977), 68 Ill. 2d 158, 173-74, 368 N.E.2d 870, 876.) These are simply factors to be considered in looking at the "totality of the circumstances" when determining the voluntariness of a statement. 68 Ill. 2d 158, 174, 368 N.E.2d 870, 876.

Defendant's first confession was made voluntarily in a noncustodial situation. Defendant obviously had not been arrested nor

was he significantly deprived of his freedom. (*Cf. People v. Fuller* (1986), 141 Ill. App. 3d 737, 742-43, 490 N.E.2d 977, 982.) As a matter of fact, defendant was allowed to leave the station in his own vehicle once the interview was terminated. He was not required to give Johnson a ride home; he just as easily could have left him at the station to find his own way back. No innocent person would assume he was in custody under similar circumstances. (*Cf. People v. Berry* (1984), 123 Ill. App. 3d 1042, 1046, 463 N.E.2d 1044, 1048.) The giving of new *Miranda* warnings therefore was not required in this instance. *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612.

Defendant's confession to Johnson clearly was admissible. (Compare *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870 with *People v. Ruegger* (1975), 32 Ill. App. 3d 765, 336 N.E.2d 50.) The trial court's findings are not contrary to the manifest weight of the evidence. See, *e.g., People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, 606, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.

■ Assuming the trial court erred in admitting into evidence defendant's first statement, the error was harmless. Defendant's second confession, made the following day, quite clearly was voluntary. Prior to giving his statement to the police, defendant had some 11 hours to reassess his decision to confess. He drove himself to the police station. There, out of Johnson's presence, he waived his *Miranda* rights and gave a written statement confessing to the robbery. Once so informed, defendant was free to exercise his own volition in deciding whether to make a statement. Defendant's second confession therefore was not a product of coercion. It did not flow from a "continuous stream of events." Nor was it "tainted" by the events of the preceding night. Defendant's second confession clearly was admissible. (See *People v. Fuller* (1986), 141 Ill. App. 3d 737, 743-44, 490 N.E.2d 977, 983-84; *People v. Colley* (1980), 83 Ill. App. 3d 834, 841-42, 404 N.E.2d 378, 384. See also *Oregon v. Elstad* (1985), 470 U.S. 298, 84 L. Ed. 2d 222, 105 S. Ct. 1285 *passim. Cf. Clewis v. Texas* (1967), 386 U.S. 707, 18 L. Ed. 2d 423, 87 S. Ct. 1338.) Because this second confession, voluntarily made, substantially corroborated defendant's first confession, any possible error that could have occurred in admitting the first confession at trial (of which we see none) was purely harmless. See *People v. Wolfe* (1986), 144 Ill. App. 3d 843, 852, 494 N.E.2d 670, 677.

For the aforementioned reasons, we affirm defendant's conviction for armed robbery and the judgment of the circuit court of Effingham

County sentencing defendant to eight years' imprisonment in the Department of Corrections.

Affirmed.

HARRISON and KASSERMAN, JJ., concur.